NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KIMBERLEE K., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY[1], I.K., *Appellees.*

No. 1 CA-JV 15-0189
FILED 12-1-2015

Appeal from the Superior Court in Maricopa County
Case Nos. JD14727
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Heavenly Gates Law Firm, LLC, Phoenix
By S. Marie Gates
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric K. Knobloch
*Counsel for Appellees*

---

[1]    Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety (DCS) is substituted for the Arizona Department of Economic Security (ADES) in this matter. *See* ARCAP 27.  For ease of reference and consistency with the record below, we refer to ADES in the text of this memorandum decision when referring to either ADES or DCS.

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1        Kimberlee K. (mother) appeals from the juvenile court's order terminating her parental rights to I.K. (child).  For the reasons that follow, we affirm.

### FACTS[2] AND PROCEDURAL HISTORY

¶2        Child, born in November 2008, is mother's biological son.  In March 2013, DCS took child into temporary custody and filed a dependency petition alleging that mother neglected child and was unable to parent due to mental illness and mental deficiency.[3]  DCS discovered that mother had left child for three to fourteen days in the care of a male friend, who was visibly intoxicated and unable to care for child.

¶3        The court found child dependent and set the case plan as reunification.  Child was eventually placed in a foster home with his biological brother.  DCS began providing numerous rehabilitative services to mother, including a psychological evaluation, a psychiatric evaluation, supervised visitation, transportation, parent aide services; case-aide services, and parenting classes.

¶4        In July 2013, mother completed a psychological evaluation with Dr. Joseph Bluth.  Dr. Bluth noted that mother had impaired judgment and insight and was unemployed.  Dr. Bluth administered three intellectual/academic assessment tests.  Mother's scores on these tests

---

[2]        We view the facts in the light most favorable to sustaining the juvenile court's ruling. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13, 107 P.3d 923, 928 (App. 2005).

[3]        Mother previously had her parental rights severed as to her daughter in 2008.  Additionally, six prior reports of mother's mental illness and neglect of child were filed with DCS in 2008, 2009 and 2010.  DCS deemed these reports unsubstantiated.

placed her in the mild mental retardation range and placed her in the second percentile of comparable adults. Mother's math and reading skills were equivalent to a fifth grade level. Dr. Bluth opined that mother's deficiencies rendered her unable to be responsive to child's needs and provide a safe and effective home. He also believed that these conditions would exist for a prolonged, indeterminate period, that a child in her care would be at risk for physical and emotional neglect, and that mental health services would not "produce enough change in her to independently parent a child."

¶5         Notwithstanding Dr. Bluth's report, DCS continued to offer services to mother, including a hands-on parent aide, supervised visitation, and transportation. Mother successfully completed parenting classes and attended most supervised visitations. Although mother often interacted and bonded appropriately with child during the visits, DCS reported that mother consistently needed redirection, yelled at the parent aide, inappropriately disciplined child, made inappropriate statements to child, and roughly grabbed child and hit him on his bottom during a visit. Mother also failed to complete parent aid services. DCS scheduled a second psychological evaluation for mother in December 2014, but mother refused to participate.

¶6         DCS moved to terminate the parent-child relationship, alleging that mother was unable to discharge her parental responsibilities due to mental illness and mental deficiency and there were reasonable grounds to believe that the condition would continue for a prolonged indeterminate period; and child had been in out-of-home placement for fifteen months or longer. *See* Ariz. Rev. Stat. (A.R.S.) § 8–533(B)(3), (8)(c) (Supp. 2014). DCS also argued that termination would be in child's best interests. *See* A.R.S. § 8–533(B). After a contested severance hearing, the juvenile court found that DCS had established the grounds for severance, and that termination was in the best interest of child. Accordingly, the juvenile court terminated mother's parental rights to child.[4]

¶7         Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235 (2014) and 12-2101(A)(2) (Supp. 2013).

---

[4]     The juvenile court also terminated the parental rights of child's biological father; he is not a party to this appeal.

**DISCUSSION**

**¶8** The juvenile court may terminate the parent-child relationship only upon finding that clear and convincing evidence demonstrates at least one statutory ground for severance; the court must also determine that severance is in the child's best interests. A.R.S. § 8–533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). On appeal, "we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a [termination] order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (citation omitted). Mother argues that DCS failed to present clear and convincing evidence to support termination of her parental rights.

**¶9** Termination of the parent-child relationship is justified when "the parent is unable to discharge the parental responsibilities because of mental illness [or] mental deficiency . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). Mother does not challenge the sufficiency of the evidence proving she suffered from a mental illness or mental deficiency that would probably continue for a prolonged, indeterminate period. Instead, mother maintains that there is insufficient evidence in the record that she is unable to parent effectively. We disagree.

**¶10** At the severance hearing, Dr. Bluth testified that mother was unemployed, had a mood disorder not otherwise specified (NOS), and had mild mental retardation. Dr. Bluth stated that providing for the needs of child was "well beyond [mother's] capacity" and he did not believe mother had the ability to parent in the foreseeable future. The DCS case manager testified that mother had continued anger management problems throughout the dependency, made inappropriate statements to child, and did not complete the offered rehabilitative services. The case manager and Dr. Bluth agreed that child would be at risk of harm or neglect under mother's care. Although mother presented evidence that she was often loving and attentive towards child during the supervised visitation, the juvenile court had to resolve any conflicts in the evidence, and we decline to re-weigh that evidence. [5] *See Jesus M.*, 203 Ariz. at 282, ¶ 12, 53 P.3d at

---

[5] We also reject mother's assertion that the juvenile court erred in giving weight to Dr. Bluth's psychological evaluation. Mother's request for a different weighing of the evidence is not appropriate for appellate review. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16, 219 P.3d 258, 262 (App. 2009) ("Our

207.  Accordingly, the juvenile court did not err in finding that the statutory ground for termination had been met by clear and convincing evidence.[6]

¶11      Mother also challenges the court's finding that that severance was in child's best interest. A.R.S. § 8-533(B).  To establish that termination is in a child's best interests, the record must contain proof that the child either would benefit from the severance or be harmed if the parental relationship continues.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19, 83 P.3d 43, 50 (App. 2004). The benefit derived from termination may include "evidence that the child is adoptable and the existing placement is meeting the child's needs." *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 511, ¶ 15, 200 P.3d 1003, 1008 (App. 2008).

¶12      Reasonable evidence supports the finding that child would be harmed by the continuation of the parental relationship and benefited by severance and adoption.  As previously noted, Dr. Blum testified that mother's mental illness and mental deficiency rendered her unable to adequately parent to a young child; that this condition would exist for a prolonged, indeterminate period; and that child was at risk for physical and emotional neglect in her care.  Additionally, the DCS case manager testified that child is very attached to his brother and foster placement, the placement is meeting all of child's needs, and child was progressing well. The record also shows that if child's foster placement is not able to adopt him, child is otherwise adoptable.  Notwithstanding mother's acknowledged love for her son and their strong bond, child's need for stability and security outweighed mother's interests in trying to parent him. Therefore, the court's determination that DCS had established that severance was in child's best interests was not an abuse of discretion.  *See Jesus M.*, 203 Ariz. at 280, ¶ 4, 53 P.3d at 205 (stating that in termination proceedings, the juvenile court "is in the best position to weigh the

---

duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence.")

6      Because we find that the court did not err in terminating mother's parental rights under A.R.S. § 8–533(B)(3), we do not address the additional ground for termination under A.R.S. § 8–533(B)(8)(c). *See Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered [termination], we need not address claims pertaining to the other grounds.").

evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings").

**CONCLUSION**

**¶13**  Based on the foregoing, we affirm the juvenile court's order terminating mother's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama