219 P.3d 258

**In re the Marriage of Heber J. HURD, Petitioner–Appellant,**

**v.**

**Elizabeth HURD, Respondent–Appellee.**

**No. 1 CA–CV 07–0342.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 27, 2009.

Collins & Collins LLP By C. Robert Collins, Phoenix, Attorneys for Petitioner–Appellant.

Community Legal Services By Thomas P. Alongi, Phoenix, Attorneys for Respondent–Appellee.

## AMENDED OPINION

OROZCO, Judge.

¶ 1 Heber J. Hurd (Father) appeals from an order awarding sole custody of the parties' three minor children to Elizabeth Hurd (Mother) and allowing her to relocate with the children to Wisconsin. We affirm the award of sole custody to Mother, vacate the decision regarding relocation and remand for further findings on the record.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 The parties were married in 1995. Together, they have three minor children.

¶ 3 On October 26, 2004, an incident occurred at the marital residence that led Mother to take her two oldest children to the hospital for treatment. The children told an emergency room nurse that their father hurt them, and the hospital contacted police. There were no marks on the children, but one daughter complained of soreness in her upper back. Mother reported to police that her daughter told her that Father kicked her in the back. Another daughter said Father struck her in the face. Mother told police there was a "strong history of abuse in the family," but that she had been afraid to report it in the past. Mother then abruptly moved with the children to Idaho. In December 2004, Father also moved to Idaho. From December 2004 through July 2005, the parties' two oldest children attended counseling in Idaho to address their "distress associated with traumatic childhood experiences involving witnessing abuse and violence," in the words of their social worker. In June 2005, Father moved back to Arizona. In August 2005, Mother and the children also moved back to Arizona. In November 2005, the parties became involved in disputes regarding the care of the children, and Mother

obtained an Order of Protection (OOP), prohibiting Father from seeing them. In December 2005, Father filed a petition for dissolution, seeking joint legal custody of the parties' three minor children. Mother sought supervised parenting time for Father, alleging a history of domestic violence and noting that an OOP was in effect. The court temporarily ordered that Father have supervised parenting time three times a week.

¶ 4 The parties and children were interviewed by Conciliation Services.[1] The Conciliation Services' report noted that the parties could only agree that Father would have the children on Sundays. Mother wanted Father to have the children every other weekend during the school year and every other week in the summer. Father wanted the children four days one week and three days the next. The report recommended nearly equal parenting time, with counseling to assist the children with the transition.

¶ 5 Shortly after meeting with Conciliation Services, Mother lost her job. She and the children moved to a family shelter in October 2006. She also filed a petition to relocate with the children to Wisconsin, where she could be near her own family.

¶ 6 At the end of November 2006, Mother obtained a new job as a phlebotomist, earning $13.50 per hour. However, she and the children continued to reside in the shelter until February 2007.

¶ 7 The court held a trial on January 16, 2007, and took the issues of custody and relocation under advisement. Father continued to have supervised parenting time.

¶ 8 On February 16, 2007, Father filed a petition for contempt, alleging Mother was not bringing the children to the supervised parenting time as often as the court ordered and was not taking the children to Father's church. At a hearing on this petition on March 14, 2007, the court found that Mother was in contempt for failing to take the children to Father's church. It did not find her in contempt of any other orders and denied Father's request for sanctions.

¶ 9 The court awarded sole legal custody to Mother and allowed her to relocate to Wisconsin at the end of the 2006–07 school year. The court specifically found "that there was a significant history of domestic violence" where Mother was the victim of abuse by Father and during which the children were present. The court further found that the children also were victims of domestic violence, based on the October 26, 2004 incident. The court ordered that the children receive counseling and awarded Father unsupervised parenting time to begin immediately. The court also set forth long-distance parenting plan orders to take effect upon the relocation. Father filed a timely notice of appeal from that ruling.[2] We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–2101.B (2003) and 12–120.21.A.1 (2003).

## DISCUSSION[3]

### Child Custody Award

¶ 10 Father argues the court abused its discretion by awarding Mother sole legal

---

1. Conciliation Services is a service of the Maricopa County Superior Court that provides mediation for custody and parenting time disputes, parent education and underage marital counseling, and helps parties determine parenting plans. *See* http://www.superiorcourt.mar icopa.gov/SuperiorCourt/FamilyCourt/Services/Conciliation Services/ (last visited June 23, 2009).

2. Father's notice of appeal did not indicate he was appealing the separate order denying contempt sanctions. However, Father attempted to raise this issue in his opening brief. "This court lacks jurisdiction over an appeal from a civil contempt adjudication." *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 18, 66 P.3d 70, 73 (App.2003) (citations omitted). Moreover, at the hearing on Father's contempt petition, he conceded that he no longer sought the cost of the filing fee as a sanction because he did not have to pay the fee himself. For these reasons, we do not address Father's claim that the court abused its discretion in denying his request for sanctions.

3. Father's statement of facts describes what he asserts are several incorrect evidentiary rulings by the family court. However, Father does not list these rulings in the "Issues on Appeal," nor did he address these rulings in the argument section of his brief. *See* ARCAP 13(a)(6) (The argument portion of appellant's brief shall contain contentions with respect to the issues presented). Because Father did not properly raise these as issues on appeal, we do not address these evidentiary rulings.

custody without making detailed findings of fact as required by A.R.S. § 25–403.B (2007). Mother contends that the only statutory factors the court did not discuss were the ones that did not apply, were undisputed, or favored Mother. She maintains that the court's findings are adequate and support its discretionary decisions regarding custody and relocation. Mother also argues that the custody award is appropriate under A.R.S. § 25–403.03.A (Supp. 2008), given the court's findings "that there was a significant history of domestic violence."

¶ 11 "We review the [family] court's decision regarding child custody for an abuse of discretion." *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7, 79 P.3d 667, 669 (App.2003). In making a custody determination, the family court is required to consider the factors enumerated in A.R.S. § 25–403.A regarding the children's best interests. In a contested custody case, the court must make specific findings on the record regarding "all relevant factors *and* the reasons for which the decision is in the best interests of the child[ren]." A.R.S. § 25–403.B (emphasis added). It is an abuse of discretion for the family court to fail to make requisite findings pursuant to § 25–403. *See Owen*, 206 Ariz. at 421–22, ¶ 12, 79 P.3d at 670–71 (holding the family court abused its discretion by changing a custody arrangement without making findings on the record); *Downs v. Scheffler*, 206 Ariz. 496, 501, ¶ 19, 80 P.3d 775, 780 (App. 2003) (same); *In re Marriage of Diezsi*, 201 Ariz. 524, 526, ¶ 5, 38 P.3d 1189, 1191 (App. 2002) (same). Here, the court in its ruling noted the statutory requirement that it consider all relevant factors.

¶ 12 Arizona Revised Statutes § 25–403.03.A states "joint custody shall not be awarded if the court makes a finding of the existence of significant domestic violence ... or if the court finds by a preponderance of the evidence that there has been a significant history of domestic violence." [4] The family court in this case found "there was a significant history of domestic violence." Therefore, the family court could not award joint custody. We hold that a finding of significant domestic violence or a history of significant domestic violence precludes an award of joint custody under A.R.S. § 25–403.03.A.[5]

¶ 13 However, when a "court determines that a parent who is seeking *custody* has committed an act of domestic violence against the other parent, there is a rebuttable presumption that an award of *custody* to the parent who committed the act of domestic violence is contrary to the child's best interests." [6] A.R.S. § 25–403.03.D (emphasis added). In this case, the family court specifically found that Father had not rebutted the presumption. We further hold that when the party that committed the act of violence has not rebutted the presumption that awarding custody to that person is contrary to the best interest of the child, the court need not consider all the other best-interest factors in A.R.S. § 25–403.A.

¶ 14 Father disputed the existence of domestic violence and, specifically, the incident on October 26, 2004, when Mother took the children to the emergency room alleging that Father injured the two older children. He stated that he only spanked the children. Father also argued that the court found only one incident of domestic violence, *i.e.*, the October 2004 incident, and that one incident does not constitute a "significant history."

---

4. We cite the current version of the applicable statute because no revisions material to this decision have since occurred.

5. For purposes of subsection A the family court must either make a "finding of the existence of significant domestic violence, pursuant to § 13–3601 or ... [find] by a preponderance of the evidence that there has been a significant history of domestic violence."

6. A.R.S. § 25–403.03.D states:

For the purposes of [subsection D] a person commits an act of domestic violence if that person does any of the following:
1. Intentionally, knowingly or recklessly causes or attempts to cause sexual assault or serious physical injury.
2. Places a person in reasonable apprehension of imminent serious physical injury to any person.
3. Engages in a pattern of behavior for which a court may issue an ex parte order to protect the other parent who is seeking child custody or to protect the child and the child's siblings.

¶ 15 The evidence cited by the court supported its finding that there was a significant history of domestic violence and not just the October 2004 occurrence. Mother testified about repeated acts of domestic violence against her in addition to the October 2004 incident. The court noted that Mother revealed a "history of domestic violence" to healthcare professionals at the hospital, and that the children reported other instances of violence to Conciliation Services.[7] In addition to the Conciliation Services report, the court had before it the Surprise Police Department report, a Child Protective Services (CPS) report[8] and a letter from the children's social worker in Idaho.[9] The court found "a significant history of domestic violence" and that the children witnessed "incidents" of domestic violence.

¶ 16 Our duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence. In re Estate of Pouser, 193 Ariz. 574, 579, ¶ 13, 975 P.2d 704, 709 (1999). We must give due regard to the trial court's opportunity to judge the credibility of the witnesses. Even though conflicting evidence may exist, we affirm the trial court's ruling if substantial evidence supports it. Id. at 580, ¶ 18, 975 P.2d at 710; Double AA Builders, Ltd. v. Grand State Constr. L.L.C., 210 Ariz. 503, 511, ¶ 41, 114 P.3d 835, 843 (App.2005); Whittemore v. Amator, 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986).

¶ 17 There was evidence to support the court's findings that there was a significant history of domestic violence between the parties, the children were victims of domestic violence and the children witnessed the incidents of domestic violence. The family court did not err in awarding sole custody to Moth-

er and in declining to award joint custody to the parties. We therefore affirm the custody award.

**Relocation Determination**

¶ 18 Father argues that the decision to allow relocation was an abuse of discretion because the court focused solely on the benefits Mother would gain by relocating and not whether the relocation was in the children's best interests or how it would affect Father's parenting time. Mother contends that the court's decision balanced the children's best interests, Mother's request to move, and Father's right to parenting time.

¶ 19 We review this decision for an abuse of discretion. Owen, 206 Ariz. at 420, ¶ 7, 79 P.3d at 669. "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." Burton, 205 Ariz. at 30, ¶ 14, 66 P.3d at 73. An abuse of discretion also occurs "[w]here there has been an error of law committed in the process of reaching [a] discretionary conclusion." Grant v. Ariz. Public Serv. Co., 133 Ariz. 434, 455–56, 652 P.2d 507, 528–29 (1982) (citation omitted).

¶ 20 In deciding a relocation request, the family court must make specific findings on the record as to all relevant factors and the reasons its decision is in the children's best interests. See Owen, 206 Ariz. at 421, ¶ 9, 79 P.3d at 670. Section 25–408.I (2007) sets forth factors pertaining specifically to a relocation and also incorporates by reference the best interest factors from A.R.S. § 25–403.A.[10]

---

7. The oldest daughter recalled Father kicking her on two separate occasions, throwing a television at Mother and breaking, throwing and kicking things when he got angry.

8. The CPS report stated that Mother told the investigator Father "beat[ ] her severely on various occasions, including while she was pregnant," and that there had been "other incidents of [Father] hitting and kicking the children when he has become angry."

9. The social worker reported that it was "evident through [the children's] disclosures that there

were numerous occasions when they did not feel safe in their father['s] care" and that the oldest child "developed a 'parentified' response to her father's abusive tendencies," feeling responsible to protect her younger siblings from abuse.

10. The factors listed in A.R.S. § 25–408.I are:
    1. The factors prescribed under A.R.S. § 25–403.
    2. Whether the relocation is being made or opposed in good faith and not to interfere with or to frustrate the relationship between the child and the other parent or the other parent's right of access to the child.

¶ 21 In *Owen*, the family court order listed some statutory factors by number, made other findings that favored neither parent, and made detailed findings on just one relocation factor, the impact of the relocation on the child's relationship with the father. 206 Ariz. at 421, ¶ 12, 79 P.3d at 670. This court held that "[w]ithout further explanation from the trial court regarding its consideration of the applicable factors, we cannot say that the trial court did not focus too much attention on the impact on the child's relationship with father to the exclusion of other relevant considerations." *Id.* *Owen* held that this was an abuse of discretion that required remand to allow the family court to state on the record its findings in compliance with A.R.S. § 25–403. *Id.* at 421–22, ¶ 12, 79 P.3d at 670–71.

¶ 22 In this case, the court found that Mother's request to relocate was "legitimate" because she had no support system in Arizona, but did have an "emotional, psychological and financial support system" in Wisconsin. *See* A.R.S. § 25–408.I.2 (requiring the court to consider whether the relocation "is being made ... in good faith"). The court also found that Father owed approximately $28,000 in child support arrearages and that Mother had not received adequate support from Father.

¶ 23 The court noted Mother's testimony that the move would benefit the children because she would have family support, but did not make any findings in this regard. Mother also testified that the cost of living was lower in Wisconsin and that the children would be attending a good school. However, the court made no findings regarding how a move to Wisconsin might benefit the children in this regard. Mother testified that at one time she moved the children back to Arizona to be near Father, which is evidence of her likelihood to allow parenting time. The court, however, made no specific finding regarding the likelihood that Mother would comply with the parenting time orders. *See* A.R.S. § 25–408.I.4.

¶ 24 Although the court ordered significant unsupervised parenting time for Father during major holidays and summer breaks, it did not address how Mother's financial situation would affect her ability to pay her share of the transportation costs. Mother testified she would borrow money from her mother to pay her expenses and transportation costs for the children to visit Father, until she obtained a job in Wisconsin.

¶ 25 Significantly, the court did not include any findings on the record as to how the move would "affect the emotional, physical or developmental needs of the child[ren]" or their stability. *See* A.R.S. § 25–408.I.6 and 8. The children attended five schools in two years, yet they were making straight A's.

3. The prospective advantage of the move for improving the general quality of life for the custodial parent or for the child.
4. The likelihood that the parent with whom the child will reside after the relocation will comply with parenting time orders.
5. Whether the relocation will allow a realistic opportunity for parenting time with each parent.
6. The extent to which moving or not moving will affect the emotional, physical or developmental needs of the child.
7. The motives of the parents and the validity of the reasons given for moving or opposing the move including the extent to which either parent may intend to gain a financial advantage regarding continued child support obligations.
8. The potential effect of relocation on the child's stability.
The factors relevant to the children's best interests listed in A.R.S. § 25–403.A are:
1. The wishes of the child's parent or parents as to custody.

2. The wishes of the child as to the custodian.
3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings and any other person who may significantly affect the child's best interests.
4. The child's adjustment to home, school and community.
5. The mental and physical health of all individuals involved.
6. Which parent is more likely to allow the child frequent and meaningful continuing contact with the other parent.
7. Whether one parent, both parents or neither parent has provided primary care of the child.
8. The nature and extent of coercion or duress used by a parent in obtaining an agreement regarding custody.
9. Whether a parent has complied with chapter 3, article 5 of this title.
10. Whether either parent was convicted of an act of false reporting of child abuse or neglect under § 13–2907.02.

The court did not address how the additional relocation might affect their grades, if at all. There was evidence regarding the parents' wishes, the parents' relationships with the children, the children's academic progress and the disputed reasons for the family's many moves. Although the court listed the statutory factors set out in A.R.S. § 25–403.A, it did not make *findings* regarding these factors.

¶ 26 Although there is evidence supporting the court's relocation decision, there was also evidence weighing against it. The court abused its discretion by failing to make specific findings regarding the applicable statutory factors and the reasons why its decision is in the children's best interests. *See Owen*, 206 Ariz. at 421, ¶ 9, 79 P.3d at 670. Without commenting on the merit s, we therefore vacate the relocation order and remand for the family court to make findings in compliance with A.R.S. § 25–403.

**Attorneys' Fees on Appeal**

¶ 27 Father requests an award of attorneys' fees and costs on appeal pursuant to A.R.S. § 25–324 (Supp.2008). We have no current financial information regarding the parties' financial resources, and Mother did not take unreasonable positions on appeal. Therefore, we deny Father's request for attorneys' fees.

## CONCLUSION

¶ 28 We hold that the family court did not abuse its discretion in awarding Mother sole legal custody of the parties' minor children. However, we vacate the family court's decision regarding relocation of the children and remand for further findings consistent with A.R.S. § 25–403 and this opinion. We also deny Father's request for an award of attorney's fees on appeal.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and SHELDON H. WEISBERG, Judge.