NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

*In re the Matter of:*

CELINA ESCAMILLA, *Petitioner/Appellee,*

*v.*

MAURICIO ACUNA, *Respondent/Appellant.*

No. 1 CA-CV 15-0480 FC
FILED 7-5-2016

Appeal from the Superior Court in Maricopa County
No. FC2014-002514
The Honorable Michael J. Herrod, Judge

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**

COUNSEL

Law Office of Karen A. Schoenau, PLLC, Scottsdale
By Karen A. Schoenau

The Murray Law Offices, PC, Scottsdale
By Stanley D. Murray
*Co-Counsel for Petitioner/Appellee*

Law Office of Timothy M. Collier, Phoenix
By Timothy M. Collier
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**C A T T A N I**, Judge:

¶1            Mauricio Acuna ("Father") appeals the superior court's award of past and current child support to Celina Escamilla ("Mother"). For reasons that follow, we affirm the awards in part, reverse in part, and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL BACKGROUND

¶2            Father and Mother have two children, J.A. and N.A., born in 2006 and 2007, respectively.  Father and Mother were never married, and the children have resided primarily with Mother.  After the parents' relationship ended in 2009, the children continued to live with Mother in Arizona, while Father worked in California. Father visited the children once or twice a year, and called occasionally.  Father continued to live in California until he moved to Arizona in 2015.

¶3            Father and Mother cooperated in raising the children, but after issues arose, Mother filed a petition to establish paternity, legal decision-making, parenting time, and child support in March 2014.  The court awarded Mother $194.37 per month in current child support and three years of past child support totaling $34,645.47.  Father filed a motion for an amended judgment, arguing various calculation errors and that he should not have owed past support.  The court denied Father's motion, and Father timely appealed.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).[1]

## DISCUSSION

¶4            Father argues that the superior court erred by awarding past support and by improperly calculating the past and current child support awards.  We review an award of child support for an abuse of discretion,

---

[1]      Absent material revisions after the relevant date, we cite a statute's current version.

accepting the superior court's factual findings unless they are clearly erroneous. *See Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009).

## I.     Past Child Support Awards.

**¶5**        Where, as here, the parties lived apart before the filing of the child support petition, the court may retroactively order up to three years of past support, "taking into account any amount of temporary or voluntary support that has been paid." *See* A.R.S. § 25-320(C). When retroactively awarding child support, the court must apply the Arizona Child Support Guidelines, A.R.S. § 25-320 app. ("Guidelines"), applicable during the period for which support is sought. *See Simpson v. Simpson*, 224 Ariz. 224, 226, ¶ 9 (App. 2010). Because Mother filed her petition before the 2015 Guidelines went into effect after June 30, 2015, the prior (2011) version of the Guidelines apply.

**¶6**        Father contends that the superior court erred by awarding retroactive child support, claiming that he spent some time with the children and made several payments to Mother, including via a joint checking account, during the relevant time period. But Mother testified (and Father did not dispute) that Father only saw the children "at most" twice a year. And although Father testified to having a joint checking account with Mother in which he deposited money for the children's support, other testimony established that the checking account statements Father submitted related to an account for child support obligations for other children from a different mother. Thus, the court did not abuse its discretion by awarding retroactive child support.

**¶7**        The superior court did not, however, give Father credit for voluntary support the parties agree he paid. *See* A.R.S. § 25-320(C). Father testified to, and Mother agreed, that Father provided approximately $2,000 over the years at issue. Thus, the retroactive support award should have been offset by $2,000.

**¶8**        As to other calculations, the superior court awarded Mother $1,165.97 per month for nine months in 2011, $1,011.53 per month for 2012, $493.49 per month for 2013, and $167.54 per month for 2014. Father argues that the court improperly relied on evidence that Mother had a $400 monthly child care expense, miscalculated insurance payments, and did not use the correct amount for Mother's income. We first address the child care expense, which applies to the past and current support years, and then review each year's calculations in turn.

### A.    Child Care Credit.

**¶9**        Father argues the court erred by granting a $400 monthly child care credit because the court relied on Mother's testimony that she paid such an amount and on a letter from Mother's neighbor confirming that was the amount she was paid to watch the children.  Father contends that this was "in effect, no evidence" to support the child care cost, and that Mother should have provided bank statements or financial records of the payments.  But we do not reweigh evidence on appeal; instead we defer to the sound discretion of the superior court and will affirm if there is substantial evidence to support the ruling.  *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).  Mother testified that she paid her neighbor $400 per month for daycare from 2011 to 2013.  Mother also testified that beginning in mid-2013, her mother began to watch the children during the day, and Mother paid her $400 per month for daycare.  Mother's neighbor's letter confirmed Mother made payments for daycare, and Father offered no contradictory evidence.  Therefore, the evidence supports the court's ruling regarding Mother's submitted child care expense.

### B.    2011 Award.

**¶10**        Father contends the court improperly included insurance payments in the 2011 support calculation.  We agree.  Mother testified that she did not have insurance costs in 2011; thus the court erred by crediting her with such payments in 2011.

### C.    2012 Award.

**¶11**        Father argues the court erred by (1) using the wrong amounts for his and Mother's income, (2) overlooking an absence of evidence supporting Mother's assertion that she paid insurance premiums; and (3) improperly awarding Mother $750 per month in education costs.

**¶12**        The court found Father's annual income to be $48,670.  But the uncontroverted evidence based on Father's testimony and his 2012 W-2 form shows he made $31,570.  Thus, the evidence does not support the amount the court used for Father's income.

**¶13**        The court found Mother's annual income was $53,848.  The court did not err because this amount is supported by Mother's testimony and by her 2012 income tax return.

**¶14** Mother initially testified that she paid $56.72 monthly for the children's insurance, but subsequently stated that the amount was $58.50. Thus the court did not err by using the $58.50 amount.

**¶15** Mother testified that she paid education costs of $1,500 over two years, or $750 per year. On appeal, Mother agrees that the court erred in calculating the education credit because the court calculated the award based on $750 per month, rather than per year. Accordingly, the 2012 support award should be modified using the correct amount for Father's income and for the education credit.

### D. 2013 Award.

**¶16** For the 2013 award, Father reasserts his argument that the court erred in its calculation of education expenses. We agree, and as previously discussed, the court should recalculate the amount based on an expense of $750 per year, rather than $750 per month.

**¶17** Father also asserts that the court erred by using $53,848 as Mother's income for 2013 because that was her 2012 income. Father argues the court should have used $87,525.52. Mother acknowledges the court erred in using $53,848, and suggests instead that the court should have used $80,609, but she contends the court still arrived at a correct monthly award because the award was calculated based on the self-support reserve test, which is derived from Father's adjusted gross monthly income. *See* Guidelines § 15.

**¶18** The self-support reserve test is designed to ensure that "the noncustodial parent is financially able both to pay the child support order and to maintain at least a minimum standard of living." *Id.* Under the 2011 Guidelines, the court deducts $903 from the noncustodial parent's adjusted gross monthly income, and if that amount is less than the calculated award, the court may reduce the award to that amount. *See id.*

**¶19** Mother argues that, incorrect income and calculations aside, the court could simply deduct $903 from Father's undisputed gross monthly income of $1396.49 to award $493.49 in monthly support. But here, using Mother's correct salary information (either of the amounts suggested by the parties) yields a child support award lower than the $493.49 self-support reserve number relied on by the court. Accordingly, the 2013 award must be recalculated.

E.     2014 Award.

¶20     For the 2014 award (although disagreeing with some of the numbers used by the court) Mother and Father agree the court properly awarded $167.54 per month in retroactive child support.  We affirm this award because the court properly used the self-support reserve test to reduce Father's child support obligation.

## II.     Current Child Support Award.

¶21     Father argues that despite awarding him 89 days of parenting time, the court did not credit these days against his child support obligation. Under the Guidelines, "unless it is apparent from the circumstances that the noncustodial parent will not incur costs for the children during parenting time, when proof establishes that parenting time is or is expected to be exercised by the noncustodial parent, an adjustment shall be made [to the child support obligation]."  Guidelines § 11.

¶22     The superior court noted in its order "that the relevant financial factors and the discretionary allowances and adjustments" it would allow in the award were incorporated in the child support order and worksheet.  But the court did not grant an adjustment for Father's 89 days of parenting time, nor did it set forth its reasoning for not doing so.

¶23     Where, as here, no party requests findings of facts and conclusions of law under Arizona Rule of Family Law Procedure 82, we generally presume the superior court found every fact necessary to support the judgment "if any reasonable construction of the evidence justifies it." *See Berryhill v. Moore*, 180 Ariz. 77, 82 (App. 1994).  But here, although the court considered evidence that Father saw the children only once or twice a year, that was before Father moved back to Arizona.  The court awarded Father 89 days of parenting time, and we presume the court awarded parenting time it anticipated Father would use.  The court therefore erred by failing to credit Father for the 89 days of parenting time.  We accordingly reverse the current child support award, with directions to credit Father for his parenting time.

¶24     Father also argues that the court erred in calculating the current child support obligation because it used incorrect figures for Mother's monthly income and the amount of insurance.  Although Mother's testimony provided a basis for finding that she made $38.32 for 24 hours a week, and $40.32 for 12 hours each week, we note that Mother's 2015 salary can be more accurately established on remand using her W-2 form.  As for the insurance expense, Mother testified to paying $58.50 in

medical insurance and $59.69 for dental insurance, which totals $118.19. The court only awarded $115.19, however, without a stated reason for the discrepancy in the record. The court should recalculate the insurance obligation on remand.

## CONCLUSION

¶25         For the foregoing reasons, we affirm the awards in part, reverse in part, and remand to the superior court to recalculate the 2011, 2012, and 2013 past child support obligations and the current child support award, consistent with this decision. We deny both parties' requests for attorney's fees and costs under A.R.S. § 25-324.



Ruth A. Willingham · Clerk of the Court
FILED: AA