NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CHARNA F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.M., *Appellees*.

No. 1 CA-JV 16-0240
FILED 4-18-2017

---

Appeal from the Superior Court in Maricopa County
No. JD22211 and JS18133
The Honorable Kristin C. Hoffman, Judge *Retired*

**AFFIRMED**

---

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge Kent E. Cattani and Judge Donn Kessler joined.

**S W A N N**, Judge:

**¶1**        Charna F. ("Mother") challenges the sufficiency of the evidence supporting the severance of her parental rights to her child, C.M. We conclude that the record contains sufficient evidence to support the court's decision, and we therefore affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        In 2002, the Department of Child Safety ("DCS" or "Department") received the first reports of possible child abuse involving Mother.  In July 2012, DCS filed a dependency petition against Mother and Tracy M. (collectively, "Parents") as to M.M. and in January 2014 filed a dependency petition against Parents as to C.E.M.   Mother ultimately consented to M.M.'s and C.E.M.'s adoption, and in April 2015, the court severed Mother's rights to those children, finding clear and convincing evidence of six months out-of-home care for a child who is less than three years old and for fifteen-month time in care.[1]

**¶3**        C.M. was born marijuana-exposed about five weeks after the first severance.  In early June 2015, DCS filed a dependency petition and in August petitioned for the termination of Mother's parental rights to C.M. After a two-day trial, the court granted the petition, finding that she had not rectified the situation that led to the previous severance and that she had chronic substance abuse issues.  Mother appeals the severance.

## DISCUSSION

**¶4**        The right to custody of one's child is fundamental — but not absolute. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).  To sever a parent's rights, the Department must show by clear and convincing evidence the elements of at least one of the statutory grounds.

---

[1]      Tracy M.'s rights were terminated separately, and he is not a party to this appeal.

*Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 7 (App. 2016); A.R.S. § 8-533(B). Mother first argues that there was insufficient evidence to support the statutory grounds for severance.

**¶5** When the court finds multiple grounds for severance, we will affirm if any of the grounds is supported by the evidence. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000). "We will not disturb the juvenile court's disposition absent an abuse of discretion or unless the court's findings of fact were clearly erroneous, i.e., there is no reasonable evidence to support them." *In re Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996). A finding may still be supported by substantial evidence even if there is contrary evidence. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

**¶6** The court found that Mother was unable to parent C.M. because of a history of chronic substance abuse that "will continue for a prolonged indeterminate period." *See* A.R.S. § 8-533(B)(3) (providing statutory ground for severance). Mother contends that she has overcome her drug and alcohol dependence and that the court could not reasonably have found otherwise.

**¶7** But C.M. tested positive for marijuana exposure at birth, has special needs and is undergoing testing for fetal alcohol syndrome. Mother is in her mid-thirties but started using marijuana and alcohol when she was 21. Between C.M.'s birth in May 2015 and November 2015 — when she successfully entered LifeWell's inpatient treatment program — most of Mother's drug and alcohol tests were diluted or were positive for marijuana or alcohol.[2] According to the psychological evaluation conducted just over a month into the LifeWell program, Mother is "at [a] high risk of relapse" and the risk will increase when she is released from the controlled environment at LifeWell. The evaluation also noted that Mother has a history of relapses and that "she seems to minimize her substance use and lacks insight into how it impacted her children, which increases the risk of relapse." During the first severance, Mother successfully demonstrated

---

[2] Since the start of the first dependency, Mother has been offered drug testing, multiple forms of drug addiction treatment, counseling, parent aide services, a psychological evaluation, and supervised visitation. Before November 2015, Mother closed out of out-patient rehabilitation programs unsuccessfully. Though Mother has had periods of successful participation in reunification services, on balance her participation has been inconsistent.

sobriety and was reunified with one of her children; but she relapsed, and her parental rights to the child were ultimately severed.

¶8        The case manager testified that if Mother were sober and treating her mental health issues, she could appropriately parent. While in LifeWell and since exiting the program, her drug and alcohol tests had been negative. At the time of trial, Mother had been sober for a total of six months (including her three months in LifeWell). However, the case manager testified that 90 days of clean tests outside a controlled environment was not enough to overcome more than a decade of drug and alcohol abuse. The case manager testified that Mother needed at least a year of sobriety to parent C.M. successfully.

¶9        Looking only at Mother's recovery since the first severance — as Mother does in this appeal — she has shown an improvement in her drug and alcohol dependence. But the court reasonably weighed Mother's drug and alcohol history in its entirety, including the previous severance. Parents must be given an opportunity to reunify with their children, but they are not entitled to attempt indefinitely to rectify the circumstances leading to the Department's intervention. *In re Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). It was five months into this severance (and almost three months after the case plan shifted to severance) that Mother finally showed significant improvement in combatting her substance abuse. Despite Mother's laudable improvements, looking at her long history of substance abuse and relapse — particularly the previous failed reunification and medical harm to C.M. at birth — we find no abuse of discretion in the court's finding by clear and convincing evidence that Mother suffers from chronic substance abuse that will continue for a prolonged and indeterminate period.

¶10       Mother also challenges the court's best-interests finding. The Department must show by a preponderance of the evidence that severance is in the child's best interests. *Dominique M.*, 240 Ariz. at 98, ¶ 7; *see also* A.R.S. § 8-533(B). To sever Mother's rights, C.M. must either affirmatively benefit from the severance or be harmed by a continuing relationship with Mother. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004).

¶11       Mother and DCS provided contradictory testimony regarding C.M.'s best interests. The parent aide testified that Mother is eager to participate in parent-aide service and always came "100 percent" prepared. Overall, the parent aide believes that Mother was "doing extremely well." In the parent aide's opinion, C.M. would be safe in Mother's custody; there

is a bond between them; and it is in C.M.'s best interests to have a continuing relationship with Mother.[3]

**¶12**        Conversely, the case manager testified that Mother could not successfully parent C.M., that C.M. had been in custody since birth, and that severance would benefit C.M. by providing stability and permanency, which the case manager feels is particularly important at C.M.'s age.  The case manager testified that Mother had longer than C.M.'s lifetime to remedy the situation and failed to do so.  C.M. is living in a placement that is meeting all his needs and is willing to adopt, and C.M. is otherwise adoptable if the placement is unable to adopt him.

**¶13**        When the court is presented with contradictory evidence, it has discretion to resolve the conflicts, and we will not reweigh it on appeal. *Vanessa H. v. Ariz. Dept. of Econ. Sec.*, 215 Ariz. 252, 257, ¶ 22 (App. 2007). Faced with the contradictory testimony of the case manager and the parent aide, the court acted within its discretion to find the case manager more credible and that severance was therefore in C.M.'s best interests.

### CONCLUSION

**¶14**        Arizona law preserves parental rights when the parent "grasps the opportunity quickly, diligently, and persistently."  *In re Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 101 (1994).  After years of Mother's unsuccessful efforts to resolve her substance dependence, C.M. was born substance-exposed.  The court could properly have determined on this record that Mother's turnaround in the final months of this case was not enough to show that she could successfully parent C.M.  We find no abuse of discretion, and we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[3]        By trial in June 2016, Mother had not completed the parent-aide service but had successfully completed all the services offered before trial. The service was scheduled to continue until at least September 2016.