NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

NICHOLAS POLICH, *Petitioner/Appellant*,

*v.*

MICHELLE POLICH, *Respondent/Appellee*.

No. 1 CA-CV 24-0098 FC

FILED 01-07-2025

Appeal from the Superior Court in Maricopa County
No. FC2018-090462
The Honorable Quintin H. Cushner, Judge

**AFFIRMED**

COUNSEL

Harmon Law Office, Tempe
By Emile J. Harmon
*Counsel for Petitioner/Appellant*

Ryan Rapp Pacheco Sorenson PLC, Phoenix
By Lesli M. H. Sorenson, Christopher T. Rapp, Teri D. McCall
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**J A C O B S**, Judge:

¶1        Nicholas Polich ("Father") appeals the superior court's Order for Legal Decision Making, Parenting Time and Child Support (the "Order") modifying Michelle Stevens' ("Mother") and Father's parenting obligations and its judgment awarding attorneys' fees and costs to Mother. Because the superior court did not abuse its discretion, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A.        Mother and Father Divorce.

¶2        Mother and Father have two minor children, O.P., born in 2015, and Q.P., born in 2016.  In April 2018, Mother and Father entered into a Consent Decree of Dissolution, in which they agreed to joint custody, equal parenting time, and joint legal decision-making ("the 2018 Decree"). Since the decree, however, the matter has turned into a high-conflict proceeding, resulting in more than 550 separate entries in the superior court file.

¶3        In 2019, both Mother and Father filed competing petitions. Mother sought to enforce the 2018 Decree regarding educational decisions for O.P., while Father sought to modify the same.  The parties then reached a Rule 69 Agreement, which changed their equal parenting time schedule. The court entered a stipulated order in October 2020, under which O.P. and Q.P. would remain at their current preschool until they could enroll in kindergarten at a specified school ("Specified School"), where they would remain until the sixth grade.

### B.        Mother and Father Disagree on the Children's Education and Father Obtains an Order of Protection.

¶4        In January 2021, Mother and Father discussed Q.P.'s enrollment in kindergarten. Father wanted him to enter kindergarten early, but Mother did not.  Q.P. took an entrance exam that qualified him for kindergarten, though not at the Specified School.  In March 2021, Father

filed a Request for Post-Decree Mediation, seeking sole legal decision-making or final say. Father alleged O.P. was being bullied at school. Mother and Father disagreed on how to handle the situation and failed to reach an agreement.

¶5　　　　Also in March, Father obtained an Order of Protection against Mother because she placed a tracking device on his vehicle. Mother was served with the order in April 2021. Mother was also arrested for tracking Father. After Mother pled guilty to misdemeanor harassment and completed a diversion program, the charges were dismissed.

### C. Father and Mother File Competing Petitions Concerning Legal Decision-Making and Parenting Time and Agree to a Comprehensive Family Evaluation.

¶6　　　　In July 2021, Father petitioned the court to request sole legal decision-making and that he receive all parenting time. He also then filed an emergency motion seeking sole legal decision-making as a result of Mother's tracking, which the court denied. In November 2021, Father again moved for sole legal decision-making, then alleging that Mother and her father were sexually abusing the children. The court granted that motion and, after an evidentiary hearing, in which a Department of Child Safety Agent testified, awarded Father temporary sole legal decision-making and Mother supervised parenting time ("Temporary Orders"). The superior court acknowledged DCS was investigating the allegations. In December 2021, Mother responded to Father's petition, denying his allegations and counter-petitioning to seek sole legal decision-making.

¶7　　　　Meanwhile, the parties agreed to a Comprehensive Family Evaluation ("CFE") by Dr. David Weinstock. In February 2022, the court appointed Dr. David Weinstock to conduct the CFE, ordering that costs be shared equally subject to reallocation. The same month, Father filed a Motion for Reconsideration of the appointment of Dr. Weinstock, which was denied. Dr. Weinstock sought to speak with the prosecutor and victim's advocate in Mother's criminal case related to her tracking of Father. Over the course of the next few months, Dr. Weinstock requested status conferences given Father's unwillingness to participate in the CFE. Father ultimately moved to terminate the CFE process. Mother opposed that motion, and the court denied it, continuing the CFE.

### D. Father Enrolls O.P. in a Different School and Mother and Father File Additional Petitions.

¶8        In April 2022, Father enrolled O.P. in a gifted school, relying on his temporary sole legal decision-making authority under the Temporary Orders.  He then moved to change O.P.'s school from the Specified School to the gifted school.  The court denied Father's motion. Father then notified Mother he was going to homeschool the children and not send them to the Specified School.  The court then ordered Father to enroll them at the Specified School.

¶9        When Father sent the children on a trip during Mother's supervised parenting time, Mother filed a petition to enforce her parenting time, also seeking contempt and sanctions ("Mother's Petition to Enforce"). The court then modified the Temporary Orders to award Mother and Father joint legal decision-making on a temporary basis and to award Mother final decision-making authority regarding schooling and Father final decision-making in all other matters.

### E. The Parties Have Discovery Disputes, Resulting in Requests for Sanctions.

¶10        In July 2022, Mother moved to compel Father's deposition and responses to requests for the production of documents and sought attorneys' fees and other sanctions alleging Father refused to cooperate in discovery.  The court granted Mother's motion but deferred the fee and sanction issues to trial.  In December 2022, Father sought contempt sanctions over Mother's alleged failure to pay the uninsured portions of certain medical bills.  The court also deferred this issue until trial.  In February 2023, Mother moved to modify the November 2021 Temporary Orders to give her temporary final legal decision-making authority and sole unsupervised custody.  After an evidentiary hearing, the court issued a temporary order affirming legal decision-making as joint and awarding Mother unsupervised visitation.  The court again deferred ruling on the request for attorneys' fees to trial.

### F. The Trial

¶11        The court held a trial on July 10-12, 2023.  The court heard testimony from the parties, Dr. Weinstock, and Kristyn Alcott, a manager of a parenting time supervision agency.  Father testified about the children and Mother.  Father testified the children accused Mother and her father of inappropriately touching O.P.  Father also testified that Mother had been Googling Father's and his wife's names and found their wedding website.

Father discussed Mother's arrest for surveillance and harassment. Additionally, Father testified O.P. had behavioral problems at school and at home including inappropriately touching other children. He also testified O.P. had been bullied at school and he wanted to enroll O.P. in a school for gifted children.

¶12        Mother testified DCS found Father's reports of abuse unsubstantiated. DCS's report was admitted into evidence. She testified the criminal investigation into the allegations of sexual abuse against her and her father was closed for lack of probable cause. Mother testified that she believed the children had been coached by Father to make these allegations. Mother acknowledged her plea and diversion agreement from tracking Father's car.

¶13        Dr. Weinstock testified about his report and his conclusions. Dr. Weinstock testified Mother was not unfit to parent the children. Dr. Weinstock concluded that substantial and consistent contact with Mother was in the children's best interests. He testified that his primary hypothesis regarding the sexual abuse allegations was that Father had coached or influenced the children. Dr. Weinstock testified Father was uncooperative during his evaluation and had walked out of his final session.

¶14        Kristyn Alcott testified Mother complied with the Temporary Orders during supervised visitation. Alcott further testified that she was not present at each visit, but that her staff documented the supervised visits electronically, as her final report reflected.

### G.        The Superior Court Issues Its Order and Judgment Granting Attorneys' Fees and Costs to Mother.

¶15        In September 2023, the court issued the Order, which resolved all pending petitions. The court awarded joint legal decision-making and equal parenting time and gave Mother presumptive decision-making authority. The court made best-interest findings, including that there was no credible evidence Mother sexually abused the children or posed a danger to them. Within its best-interest analysis, the court found Mother had committed domestic violence against Father under A.R.S. § 25-403.03(A). However, the court declined to apply the prohibition on joint custody in A.R.S. § 25-403.03(A) because Mother's domestic violence was not significant. The court also found Mother rebutted the presumption under A.R.S. § 25-403.03(D) that Father should be awarded legal sole decision-making for reason of her domestic violence. Mother did so by (1) showing joint legal decision-making and equal parenting time are in the

children's best interests, (2) completing a domestic non-violence program, and (3) showing there was no domestic violence during the marriage.

**¶16**        The court ordered Mother to pay child support. The court, using the Arizona Child Support Guidelines, A.R.S. § 25-302 app. ("Guidelines"), ordered Mother to pay Father $62.00 per month. The court also granted judgment for Father and against Mother for past child support of $30,965.00. Although Mother sought more than $325,000 in attorneys' fees, the court awarded her fees and costs totaling $12,750.00. The court found that there was no substantial disparity of financial resources between the parties and that Father acted unreasonably during discovery.

**¶17**        The court denied Father's Petition for Contempt for lack of credible evidence. The court granted Mother's Petition to Enforce, finding Father interfered with her parenting time under the Temporary Orders. The court also ordered Father to pay $18,215.29 for Dr. Weinstock's work "to offset the difference between the amounts Father and Mother have paid to date."

**¶18**        Father timely appealed. We have jurisdiction. Ariz. Const., art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

### DISCUSSION

**¶19**        Father challenges the Order's provisions concerning legal decision-making, parenting time, child support, and its award of attorneys' fees and costs to Mother.

**¶20**        We will affirm a superior court's decision regarding legal decision-making, parenting time, child support, and attorneys' fees absent an abuse of discretion. *See Nold v. Nold*, 232 Ariz. 270, 273 ¶ 11 (App. 2013). There is an abuse of discretion where the record, viewed in the light most favorable to upholding the superior court's decision is "devoid of competent evidence to support the decision or when the court commits an error of law in the process of reaching a discretionary conclusion." *Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018) (internal quotation and citation omitted). We will not reweigh the evidence or determine credibility on appeal. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347 ¶ 13 (App. 1998); *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009). And we defer to the superior court's factual findings unless they are clearly erroneous. *Engstrom*, 243 Ariz. at 471 ¶ 4.

## I.  Father's Opening Brief Fails to Comply with ARCAP 13.

**¶21**    Mother argues that Father's Opening Brief fails to comply with ARCAP 13(a) and (d) because his brief failed to include adequate citations to the record or legal authorities.  ARCAP 13(a)(7) (requiring legal authority); ARCAP 13(d) (requiring citations to the record).  Mother requests we find any unsupported contention or argument waived.  *See In re Aubuchon*, 233 Ariz. 62, 64-65 ¶ 6 (2013).  While we agree with Mother that portions of Father's brief do not comply with ARCAP 13, we exercise our discretion to address the merits of his arguments, as our resolution of these issues affects the best interests of minor children.  *See State v. Smith*, 203 Ariz. 75, 79 ¶ 12 (2002) (exercising discretion to address waived arguments); *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966) (declining to find arguments waived where interests of minor children were involved); *accord Hays v. Gama*, 205 Ariz. 99, 102 ¶ 18 (2003) ("We have repeatedly stressed that the child's best interest is paramount in custody determinations.") (collecting cases).  We address each argument in turn.

## II.  The Superior Court Did Not Abuse Its Discretion in Awarding Joint Legal Decision-Making and Equal Parenting Time.

### A.  The Superior Court Did Not Abuse Its Discretion in Finding Mother's Domestic Violence Was Not Significant.

**¶22**    Father contends the superior court abused its discretion by finding Mother's domestic violence was not significant under A.R.S. § 25-403.03(A) because it incorrectly considered Mother's stalking as a single incident.  We disagree.

**¶23**    Joint legal decision-making is precluded by statute "if the court makes a finding of the existence of significant domestic violence pursuant to [A.R.S.] § 13-3601 or if the court finds by a preponderance of the evidence that there has been a significant history of domestic violence."  A.R.S. § 25-403.03(A). The superior court received and weighed the evidence of the entire course of Mother's stalking and surveilling Father and the children.  The superior court expressly considered three factors we have approved in determining whether domestic violence is significant under A.R.S. § 25-403.03(C).  They are: "(1) [t]he seriousness of the particular incident of domestic violence, (2) the frequency or pervasiveness of the domestic violence, (3) and the passage of time and its impact."  *See DeLuna v. Petitto*, 247 Ariz. 420, 424 ¶ 15 n.6 (App. 2019) (noting these non-statutory "factors seem reasonable"). Weighing the evidence, the court stated that Mother's "acts in the spectrum of domestic violence do not

constitute significant [domestic violence] as contemplated by statute." The court's finding is supported by reasonable evidence and applies a correct legal standard. Accordingly, Father has shown no abuse of discretion.

¶24 Father contends the court failed to "comprehensively" evaluate his allegations against Mother, apparently because the court did not recite the facts of record more fully in its ruling. We assume the court properly assessed the facts necessary to support its judgment, including finding one party's testimony more credible than the other's, as the court did here by implication. *See Fuentes v. Fuentes*, 209 Ariz. 51, 55-56 ¶ 18 (App. 2004); *Elliot v. Elliot*, 165 Ariz. 128, 135 (App. 1990). Because there is no indication the superior court failed to review any of this evidence rather than assign it minimal weight or find Mother more credible, Father has shown no abuse of discretion.

### B. The Superior Court Did Not Abuse Its Discretion in Its Consideration of the Children's Alleged Behavior.

¶25 Father argues the superior court disregarded therapy records, medical records, and testimony demonstrating the children engaged in inappropriate behavior with another child during Mother's parenting time. Father argues the court should have explained why it found such evidence not credible. Again, the superior court made clear that it considered all evidence in the record and found it did not have credible testimony and evidence that Mother caused the behaviors by sexually abusing her children. Dr. Weinstock's report, which the court cites in the Order, found a lack of data to support a finding Mother inappropriately touched her children. Again, Father has shown no abuse of discretion, and it is not for us to reweigh the evidence. *See Hurd*, 223 Ariz. at 52 ¶ 16.

### C. The Superior Court Did Not Abuse Its Discretion in Making Its Best-Interests Findings.

¶26 Father argues the court abused its discretion because it did not order O.P. enrolled in the gifted school. Father contends this improperly disregarded O.P.'s best interests.

¶27 First, Father argues the Order did not clearly explain why the court declined his request to enroll O.P. in the gifted school. Not considering O.P.'s gifted status, Father argues, "contraven[es] established legal standards that prioritize a child's best interests in educational decisions." Father's argument fails for several reasons. It improperly relies on A.R.S. § 15-779.02, which does not bear on the court's legal decision-making analysis. *Compare* A.R.S. § 15-779.02 (describing the obligations of

a governing board for identifying gifted pupils) *with* A.R.S. § 25-403(A) (enumerating the factors for legal decision-making). In addition, the court received conflicting evidence about whether O.P. needed to be enrolled in a gifted program. It heard Father had placed O.P. in a gifted program, and that O.P. was tested and recommended for a gifted program, but also Dr. Weinstock's contrasting analysis that an evaluator merely provided a gifted program as one option for O.P. Because the court had discretion to weigh this evidence as it determined, we find no abuse of discretion in the court's determination as to whether O.P.'s best interests required his enrollment at the gifted school. *See Hurd*, 223 Ariz. at 52 ¶ 16.

**¶28** Second, Father argues the superior court abused its discretion by failing to "critically weigh evidence" that O.P. was being bullied at school and by ignoring the claimed "unreasonableness" of Mother's response to the asserted bullying. This argument again asks this Court to reweigh evidence, which we will not do. *Id.*

### III. The Superior Court Did Not Abuse Its Discretion in Considering Dr. Weinstock's Report and Testimony, or Kristyn Alcott's.

**¶29** Father challenges the superior court's consideration of Dr. Weinstock's report and testimony. First, Father argues the superior court erred because it admitted Mother's polygraph test through Dr. Weinstock's report without stipulation. Second, Father argues the superior court erred by "solely" relying on Dr. Weinstock's report. Neither argument is supported by the record. He has shown no abuse of discretion.

#### A. The Superior Court Did Not Admit Mother's Polygraph into Evidence and Did Not Rely on It.

**¶30** While Dr. Weinstock's report referred to Mother's polygraph test, the court never admitted the test into the record. The superior court did not rely on the polygraph, as it is not referenced in the Order. And while the court considered Dr. Weinstock's report, Dr. Weinstock only gave the polygraph "minimal weight[,]"and Father never objected to the admission of Dr. Weinstock's Report. The court did not abuse its discretion by omitting to reference a polygraph not received into evidence, and which was minimally relied upon in a report that was admitted into evidence without objection. *See Gutierrez*, 193 Ariz. at 347 ¶ 13.

**B.     The Superior Court Committed No Legal Error by Considering Dr. Weinstock's Report.**

**¶31**         Father argues the superior court erred by "citing or adopting" Dr. Weinstock's report, which supported the court's findings as to domestic violence, the lack of substantiation of sexual abuse by Mother of the children, Mother's fitness as a parent, and granting Mother final say.  Each of these arguments fail in turn.

**¶32**         Father argues that the superior court failed to consider whether there was domestic violence as required by A.R.S. § 25-403.03(C) by "relying on Dr. Weinstock's assertion of no credible school records" and supposedly failing to consider evidence from the children's schools, DCS, and witnesses.  Father is wrong.  The superior court said it considered all evidence presented by the parties and even referenced some of the evidence Father contends it did not consider including reports that the children exhibited inappropriate behavior at school.  Again, we assume the court properly assessed the facts necessary to support its judgment.  *See Fuentes*, 209 Ariz. 51, 55-56 ¶ 18; *Elliot*, 165 Ariz. at 135.  And we do not reweigh the evidence.  *See Hurd*, 223 Ariz. at 52 ¶ 16.

**¶33**         Father next argues the superior court abused its discretion by failing to give evidence proper consideration, which he contends violates A.R.S. § 25-403(A)(1) and § 25-403.03(C), by rejecting Father's claims that Mother sexually abused the children.  This argument fails because substantial evidence supports the superior court's decision that the allegations of sexual abuse against Mother are unsubstantiated.  Father disagrees with Dr. Weinstock's report and testimony, but the court did not abuse its discretion by finding it credible and making findings consistent with it.  The superior court is in the best position to weigh conflicting evidence, which we will not reweigh.  *See id.*; *Backstrand v. Backstrand*, 250 Ariz. 339, 346 ¶ 27 (App. 2020).

**¶34**         Father contends the superior court abused its discretion under A.R.S. § 25-403(A) and violated A.R.S. § 25-403.01 by finding Mother a fit parent and granting her final say in reliance on Dr. Weinstock's report and testimony.  Father argues the court weighed Dr. Weinstock's diagnosis of him too heavily and Mother's diagnosis insufficiently.  Father's arguments again incorrectly ask us to reweigh the evidence.  *See Backstrand*, 250 Ariz. at 346 ¶ 27.  Father has shown no abuse of discretion.

### C. The Superior Court Did Not Abuse Its Discretion by Relying on Kristyn Alcott's Testimony.

¶35 Father argues the court abused its discretion by relying on Kristyn Alcott's and unknown supervisors as their reports are devoid in weight and credibility. Father also contends Kristyn Alcott's testimony was not credible because it was contradictory. Father again asks us to reassess the credibility of witnesses and weigh the evidence, which we will not do. *See id.* Any reliance by the superior court on Kristyn Alcott's testimony as reliable and helpful as concerns Mother's compliance with orders was within the superior court's sound discretion.

## IV. The Superior Court Did Not Abuse Its Discretion in Awarding Mother Attorneys' Fees and Costs and Reallocating Dr. Weinstock's Fees.

### A. The Victims' Bill of Rights Does Not Bar the Sanctions.

¶36 Father argues the superior court's orders sanctioning him for noncooperation in discovery violated the Arizona Victims' Bill of Rights, Arizona Constitution Article 2, Section 2.1, as codified at A.R.S. § 13-4433. Father contends his status as a victim of stalking should have shielded him from discovery in this case, thus keeping the court from awarding fees to Mother for his non-cooperation.

¶37 Though Father was a victim, he failed to argue in response to Mother's motion to compel that he was protected by the Victims' Bill of Rights, nor did he argue his rights were violated when the court allowed Dr. Weinstock to complete his report. By failing to raise this position before judgment, Father waived it on appeal. *See Roebuck v. Mayo Clinic*, 256 Ariz. 161 ¶ 16 (App. 2023). Moreover, it is true that Father's rights as a victim of stalking could shield him from unnecessary contact with Mother concerning that offense. *See State v. Lee*, 226 Ariz. 234, 239 ¶ 13 (App. 2011) ("The purpose underlying a victim's right to refuse a pretrial interview is to protect the victim's privacy and minimize contact with the defendant prior to trial."). But his rights as a victim of stalking cannot shield him from discovery about his unsubstantiated charges that Mother committed a different offense. *See* Ariz. Const., art. 2, § 2.1(C) (granting victims' rights to "a person against whom the criminal offense has been committed"). The superior court granted Mother attorneys' fees for Father's "unreasonable conduct during this litigation, including during discovery[]" and that award does not offend the Victims' Bill of Rights. Father has shown no abuse of discretion.

### B.   Substantial Evidence Supports the Award of Fees.

¶38    The superior court did not abuse its discretion by awarding fees for Father's unreasonable conduct during discovery. Substantial evidence supports the finding that Father acted unreasonably, including seeking to remove Dr. Weinstock after agreeing to have him conduct a CFE and removing the children from their schools in violation of a court order. *See Hurd*, 223 Ariz. at 52 ¶ 16. And the superior court only awarded $12,750.00 of Mother's more than $325,000.00 in requested fees, which shows restraint and careful judgment.

¶39    Moreover, the court did not abuse its discretion by ordering Father to pay half of Dr. Weinstock's $18,215.29 fee. Father argues that the court failed to consider the resources of the parties when allocating the costs in violation of A.R.S. § 25-406(B). But Father agreed to split the cost of the CFE equally with Mother, and the superior court found the record showed no significant disparity in the parties' resources.

¶40    Father also argues the superior court abused its discretion because it failed to make specific findings of fact about the parties' income and resources, despite Mother's general request for specific factual findings in the matter. But the superior court was not required to make specific findings about financial resources under A.R.S. § 25-324. *MacMillan v. Schwartz*, 226 Ariz. 584, 592 ¶ 39 (App. 2011). And notwithstanding Mother's request, to avoid waiver, Father was required "to object to inadequate findings at the trial court level so that the court [would] have [had] an opportunity to correct them." *Id.* (internal quotation omitted). He did not object. Father has shown no abuse of discretion in the fee award.

### V.   The Superior Court Did Not Abuse Its Discretion in Its Child Support Award.

¶41    Father argues the superior court abused its discretion in its child support award. Each of his arguments fail in turn.

¶42    First, Father claims the court failed to consider the cost of Mother's home as well as her in-laws' contributions to her finances as a gift. It appears Mother moved into the home after trial, but there is no evidence of its cost. As to the money received from her in-laws, Father contends that the money was a gift and should be counted towards Mother's income. But the correct inquiry is not whether the money received is a gift or a loan but rather, whether "the parent acquired a source of funds for living and personal expenses, from which the children would have benefitted had their parents not divorced." *Sherman v. Sherman*, 241 Ariz. 110, 114 ¶ 15

(App. 2016). Here, evidence was presented that the money Mother received from her in-laws went straight toward paying her attorneys' fees and that she did not use them for personal living expenses. Father has not shown the court erred in finding that "credible evidence and testimony do not support a finding that any financial support from Mother's family should be attributed to her income."

¶43 Second, Father argues the court erred by including his employer-provided tuition assistance in his income. A court may consider non-cash employment-based benefits as income if they are "significant and reduce personal living expenses." Guidelines § II.A.1.f. Father received thousands of dollars annually as tuition reimbursement, and he has not shown that the court abused its discretion by including these benefits in his income calculation. *See Patterson v. Patterson*, 226 Ariz. 356, 360 ¶ 11 (App. 2011).

¶44 Third, Father argues the court abused its discretion by not including childcare costs in its child support determination. But it is within the superior court's discretion to add childcare costs to the child support obligation. *See* Guidelines § III.B.4.a.

¶45 Fourth, Father argues the court abused its discretion by not taking account of his debts and liabilities. But Father never provided the court with evidence of his debts and liabilities and only mentioned his debt in response to Mother's application for attorneys' fees.

## CONCLUSION

¶46 We affirm. In our discretion, we also grant Mother's request for her reasonable attorneys' fees under ARCAP 25 for Father's failure to comply with ARCAP 13, subject to Mother's compliance with ARCAP 21. Mother also is awarded her taxable costs incurred on appeal, subject to her compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    TM