NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In re the Marriage of:

NADINE BEAUMONT, *Petitioner/Appellant/Cross-Appellee*,

*v.*

DAVID BEAUMONT, *Respondent/Appellee/Cross-Appellant*.

No. 1 CA-CV 21-0426 FC
No. 1 CA-CV 21-0642 FC
(Consolidated)
FILED 1-12-2023

---

Appeal from the Superior Court in Mohave County
No. L8015DO201907142
The Honorable Kenneth Gregory, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED IN PART AND REMANDED**

---

COUNSEL

Silk Law Office, Lake Havasu City
By Melinda Silk
*Counsel for Petitioner/Appellant/Cross-Appellee*

Law Office of Heather C. Wellborn PC, Lake Havasu City
By Heather C. Wellborn, Alyssa N. Oubre
*Counsel for Respondent/Appellee/Cross-Appellant*

_____

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

_____

**M O R S E**, Judge:

¶1          Nadine Beaumont ("Wife") and David Beaumont ("Husband") challenge several rulings in the decree dissolving their marriage. We vacate the finding that the stocks in a joint trust account are community property, the spousal-maintenance award, the expert-witness-fee award, and the child-support order. We remand for reconsideration of these issues but affirm all other rulings.

## FACTS AND PROCEDURAL BACKGROUND

¶2          The parties married in 2003 in Pennsylvania and have one minor child, born in 2004. Wife petitioned for dissolution of marriage in 2019 and the superior court held a two-day trial in 2020.

¶3          Before the marriage, Husband acquired two parcels of real property in Pennsylvania that he later deeded to a community property trust. There are oil and gas leases on these parcels that pay monthly royalties in varying amounts. For the 17 months before the trial, the royalties paid an average of $5,000 a month. The superior court concluded that the Pennsylvania properties and the royalties they generated were community property. Finding no competent evidence of their value, the court ordered the parties to hold the parcels as tenants in common and share equally in any royalties.

¶4          At the time of the trial, Wife was 60 years old. She requested spousal maintenance in the form of half the royalties for life, but if her share of the royalties was less than $3,500 in any given month, Wife asked for Husband to make up the difference. Husband, on the other hand, opposed any award of spousal maintenance. The superior court awarded Wife spousal maintenance of $1,000 per month until May 2025, when she will be 65. The court also entered a current child support order and ordered Husband to pay past child support.

¶5          The community owned three businesses: Wise Steward, Back to Basics, and Complete Accounting and Tax, Inc. During the two-day trial,

each party called an expert to testify to the value of the businesses. The superior court accepted the conclusion of Wife's expert that only Wise Steward had any value. The court found Wise Steward was worth $264,000 and awarded all three businesses and their assets and liabilities to Husband with an equalization payment of $132,000 to Wife.

¶6 Wife asked to keep the marital home and pay Husband for his share of the equity. Husband did not oppose this if Wife could refinance the mortgage and remove his name from the debt, but the parties could not agree on the appropriate valuation date for determining Husband's interest in the equity. The court ordered the home sold and the equity divided equally. Further, if the parties could not agree to a broker or sales price, the court ordered them to use Husband's broker and list the home for "at least $599,900."

¶7 During the marriage, Wife inherited stocks from her father. A few years later, she transferred some of those stocks into a joint trust account, while leaving others in trust accounts in her name only. The parties disputed whether the stocks in the joint trust account were community or separate property. The superior court found they were community property because Wife gifted these stocks to the community. Wife was awarded the joint trust account and ordered to pay Husband an equalization payment of $151,585, which was 50% of the account value on the date of service.

¶8 After the superior court made its rulings but before entry of the final decree, Husband sought to hold Wife in contempt for not complying with the order to sell the home. The court entered the final decree and separately set an order to show cause hearing on the contempt petition. Wife filed a timely notice of appeal. She also moved to stay execution of the decree, which Husband opposed. Husband then cross-appealed from the decree. We have jurisdiction under A.R.S. § 12-2101(A)(1).

¶9 While the appeal and cross-appeal were pending, the parties disputed the need for a supersedeas bond. Husband filed a second petition for contempt relating to Wife's alleged transfer of funds from the joint trust account. The court addressed all these issues at an evidentiary hearing on September 16, 2021.

¶10 At the hearing, the parties agreed that rather than post a supersedeas bond, Wife would refinance the mortgage on the marital home into her name within 90 days. They agreed to hold the house as tenants in

common until the appeal is resolved. Each party agreed to pay half the mortgage for 90 days; after that, Wife was responsible for the mortgage payments. Husband will be reimbursed for the mortgage payments he made when he receives his share of the equity. After hearing from two real estate brokers, the court found the fair market value of the marital home on September 16, 2021, was $689,000, with a mortgage balance of $312,500. The parties agreed to determine Husband's share of the equity based on these figures, pending the outcome of the appeal. Husband separately appealed the valuation of the marital home in the post-decree order. We consolidated that appeal with the pending appeal and cross-appeal from the decree and have jurisdiction under A.R.S. § 12-2101(A)(1), (2).

## DISCUSSION

### I.    Stocks in the Joint Trust Account.

**¶11**        The stocks were Wife's separate property when she inherited them. A.R.S. § 25-213(A). But separate property can be transmuted into community property by agreement, gift, or commingling. *In re Marriage of Cupp*, 152 Ariz. 161, 164 (App. 1986). The superior court found that Wife intended to gift the stocks to the community when she transferred them from her separate trust account to a joint trust account. Wife argues the stocks are her separate property. The classification of property as separate or community is a question of law we review de novo. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007).

**¶12**        When separate funds are placed into a joint account, there is no presumption that the owner of the funds intended to gift half of the funds to the other spouse. *Stevenson v. Stevenson*, 132 Ariz. 44, 46 (1982) (citing A.R.S. § 14-6103(A), now § 14-6211). Placing separate funds into a joint account suggests, but does not conclusively prove, an intent to gift. *Grant v. Grant*, 119 Ariz. 470, 472 (App. 1978); *see also* A.R.S. § 14-6211(A) (noting funds in a joint account "belong[] to the parties in proportion to the net contribution of each to the sums on deposit unless there is *clear and convincing evidence* of a different intent" (emphasis added)).

**¶13**        The superior court found "it more likely than not" that Wife intended to gift her separate property stocks to the community by depositing them into a joint trust account. However, the deposit of separate funds into a joint account does not indicate a gift absent *clear and convincing* evidence of such an intent. *Stevenson*, 132 Ariz. at 46. The court did not apply the clear-and-convincing legal standard for finding a gift. Ordinarily, determining whether a spouse intended a gift is a question of fact subject to

a clearly erroneous standard of review. *Bobrow v. Bobrow*, 241 Ariz. 592, 595, ¶ 11 (App. 2017). But the court abuses its discretion when it misapplies the law or relies on incorrect legal standards. *Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 13 (App. 2019). Here, the court applied an incorrect legal standard. As a result, we vacate the finding that the stocks are community property and remand for reconsideration.

## II.     Orders Regarding the Marital Home.

**¶14**         The decree ordered the parties to sell the marital home and divide the net proceeds equally. If the parties could not agree on a broker or listing price, the court ordered the home listed with Husband's broker for "at least" $599,900. We review the allocation of community property for an abuse of discretion. *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4.

**¶15**         Wife concedes the superior court had discretion to order the sale of the home. She argues the court abused its discretion here because Husband agreed she could have the home as long as he was paid his share of the equity and taken off the mortgage. Contrary to Wife's assertion, the parties did not reach an enforceable agreement. At the time of trial, Wife had not yet refinanced the home; nor did she offer conclusive evidence that she could do so. Based on this speculative evidence, and absent an enforceable agreement, the court was within its discretion to order the parties to sell the home and divide the proceeds equally.

**¶16**         Although Wife apparently refinanced the mortgage after the decree, that was not the situation at the time of trial. We review the superior court's ruling based on the record at the time of trial. *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4 (App. 1990) (noting appellate court review is "limited to the record before the trial court"). When the superior court made its ruling, there was no evidence showing that Wife had refinanced the home or demonstrating her ability to do so. Moreover, Wife waived any argument related to refinancing by raising it for the first time in her reply brief. *See Johnson v. Provoyeur*, 245 Ariz. 239, 243, ¶ 13 n.5 (App. 2018) (noting that issues first raised in a reply brief are generally considered waived).

**¶17**         Wife also argues the superior court ignored the effect of selling the marital home on the child. Any harm to the child from the sale of the home was for the court to weigh against the parties' property interests. *See Dole v. Blair*, 248 Ariz. 629, 633, ¶ 14 (App. 2020) (noting courts may consider the children in deciding which party should be awarded a piece of property, but "may not impinge on either party's property

interests").  We will not reweigh these considerations on appeal.  *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

**¶18**     The superior court's under advisement ruling ordered the parties to list the home for $599,900.  Wife contends the court improperly changed that ruling when it added that the home should be listed for "at least" $599,900 in the final decree.  The addition of this language in the final decree was not improper.  It is reasonable to infer that the court added this language so that the parties could benefit from any subsequent market increase.  Indeed, Husband provided two market analyses showing the home's value had increased nearly $75,000 between September 2019 and November 2020.  Wife did not refute this evidence.  The language is equitable because the court ordered the parties to pay the mortgage using funds in a community bank account so they will share equally in any increase in value.  Because there was no agreement for Wife to buy out Husband's interest at a certain price, the court did not abuse its discretion by ordering the home sold for at least $599,900.

**¶19**     The superior court was also within its discretion to order the parties to use Husband's broker absent an agreement.  Husband's broker provided the only comparative market analysis.  Wife did not provide an alternative broker or method of selecting among competing brokers.  We find no abuse of discretion.

### III.     Post-Decree Ruling on the Marital Home.

**¶20**     Husband appeals the valuation of the marital home, arguing the superior court erred because Wife's valuation expert had a conflict of interest and Wife's delay resulted in a lower home value.  We affirm the valuation of a community asset if reasonable evidence supports it.  *See Johnson v. Johnson*, 131 Ariz. 38, 46 (1981).  "We must give due regard to the trial court's opportunity to judge the credibility of the witnesses." *Hurd*, 223 Ariz. at 52, ¶ 16.  And we do not reweigh conflicting evidence.  *Id.*  "Even though conflicting evidence may exist, we affirm the trial court's ruling if substantial evidence supports it." *Id.*  We will not substitute our discretion for that of the trial judge.  *Cook v. Losnegard*, 228 Ariz. 202, 205, ¶ 11 (App. 2011).

**¶21**     Wife's real estate valuation expert was married to Wife's trial attorney.  The superior court found Wife's expert more reliable because he personally inspected the home and relied on multiple closed transactions as comparable sales to determine the home's value.  By contrast, Husband's expert did not personally inspect the home and relied on a single

comparable sale of a home that was not similar to the marital home and the other comparable homes had not closed escrow. Further, the court noted that both experts agreed the real estate market had slowed recently, and the comparable homes Wife's expert relied on showed sales or offers lower than the listing price.

**¶22** Furthermore, the court knew Wife's expert and trial attorney were married, and any alleged bias or conflict of interest "is a matter that affects credibility and thus goes to weight, rather than to admissibility." *Maricopa County v. Barkley*, 168 Ariz. 234, 240 (App. 1990). On issues of credibility, we defer to the superior court. *Hurd*, 223 Ariz. at 52, ¶ 16. The court did not err by considering Wife's expert's testimony.

**¶23** As for Wife's alleged delay in listing the home for sale, neither the ruling after trial nor the final decree set a specific date by which the home must be listed or sold. And we will not reweigh how any alleged delay may have impacted the value of the home. *Id.* We find no abuse of discretion in the court's valuation of the marital home.

## IV. Business Valuation.

**¶24** The superior court accepted the opinion of Wife's expert and found that only one of the community businesses—Wise Steward—had any value. The court found that Wise Steward had a value of $264,000 as of March 31, 2020. The court awarded Husband the three businesses and all business bank accounts, assets, and liabilities; and awarded Wife an equalization payment of $132,000.

**¶25** The valuation of assets is a factual determination. *See In re Marriage of Molloy*, 181 Ariz. 146, 150 (App. 1994). We will affirm the superior court's determination if reasonable evidence supports it. *Id.* at 152. The record supports the finding that Wife's expert provided a reasonable valuation and sufficiently refuted the issues raised by the opposing expert.

**¶26** On cross-appeal, Husband argues the superior court's valuation improperly included a "bad debt" Back to Basics owed Wise Steward. Husband's expert would deduct this "bad debt" from Wise Steward's receivables, thereby lowering its value. According to Wife's expert, this would not affect the overall valuation of both businesses. As Wife's expert explained, if the "bad debt" was deducted from Wise Steward's accounting, it would have to be added back to the accounting for Back to Basics. The court was within its discretion to weigh these competing expert opinions. *See Hurd*, 223 Ariz. at 52, ¶ 16 (noting that appellate courts do not reweigh conflicting evidence).

¶27     Husband also argues that the court abused its discretion by not ordering the business sold as he proposed. Because Husband cited no authority or facts to support this argument, it is waived. *See* ARCAP 13(a)(7); *In re Aubuchon*, 233 Ariz. 62, 64-65, ¶ 6 (2013). Similarly, Wife argues, without citations to the record, that the court did not address two bank accounts related to Complete Accounting and Tax, Inc. This argument is also waived. *Id.*

## V.     Bank Accounts and the $10,000 Equalization Payment.

¶28     There were two community personal bank accounts at Wells Fargo: a checking account and a money market account. The superior court ordered the parties to close the checking account and equally divide the $1,300 remaining on deposit. The funds in the money market account came from the monthly oil and gas royalties. The court ordered the parties to continue paying the mortgage from the money market account until they sold the home or the funds were depleted.

¶29     There was also a BBVA account Husband opened in his name after the date of service. The only bank statement related to this account showed a balance of $28,500 as of October 2020. The court awarded the BBVA account to Husband. To equalize the various bank accounts, the court ordered Husband to pay Wife $10,000, finding this amount was equitable because Wife had exclusive use of the marital home during the proceedings, and the mortgage was paid with community funds (the royalties) during that time.

¶30     Wife argues the $10,000 equalization payment is inequitable; conversely, Husband argues Wife was not entitled to any equalization payment. We will affirm the allocation of community property absent an abuse of discretion. *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4.

¶31     Since the date of service, both parties paid their personal expenses from the community royalties. Husband also ran personal expenses through the businesses. According to Wife, this resulted in Husband spending more than his share of the community income during the proceedings. Wife also argues that Husband kept all the business revenue and did not pay any spousal maintenance or child support during the proceedings. In contrast, Husband argues Wife deserved no equalization payment because she spent more than her share of the royalty income.

¶32     Earnings paid to a spouse after service of the petition are that spouse's separate property. *See* A.R.S. § 25-213(B) (property acquired after

service of a petition for dissolution is that party's separate property). The evidence showed that the funds with BBVA were Husband's post-service earnings.

¶33        Nonetheless, the businesses were community property, so Wife may have been entitled to any profits the businesses generated in excess of Husband's reasonable compensation. *See Schickner v. Schickner*, 237 Ariz. 194, 199, 201, ¶¶ 22, 30 (App. 2015). There was, however, no evidence showing such additional profits. Thus, the record does not show that Husband improperly retained any community business revenue above his reasonable compensation.

¶34        Wife argues it is impossible to determine the business revenues because Husband did not disclose all the relevant bank statements. Yet Wife relied on her expert's business valuation opinion despite his admissions that some statements were missing and not every personal expense Husband ran through the business was calculated. Wife cannot complain about these limitations on one hand but ignore them on the other. We find this issue waived.

¶35        Husband contends Wife was not entitled to $10,000 because his calculations show she spent more than he did from the community account. However, his calculations did not include any supporting documentation. He also attributed the mortgage and some of the child's expenses to Wife which skewed her spending. And Husband will receive his share of the community funds that were spent on the mortgage when he is paid his share of the equity.

¶36        On this record, we cannot find the allocation of the bank accounts and $10,000 equalization payment was inequitable. When viewed as a whole and in the light most favorable to upholding the decree, we find $10,000 was reasonable. There is no evidence that Husband improperly retained business revenues. And Wife did not prove exactly how much more community funds Husband spent during the proceedings than she spent. Therefore, Wife cannot fault the court for estimating an equitable equalization payment based on the record presented. We affirm the allocation of the community and business bank accounts and the equitable equalization payment.

## VI.    Spousal Maintenance.

¶37        The superior court awarded Wife $1,000 a month in spousal maintenance from May 1, 2021, until she turns 65 in May 2025. Husband argues that Wife was not entitled to any spousal maintenance. Wife

contends she was entitled to spousal maintenance from the start of the proceedings in June 2019, and that the amount is insufficient. We review an award of spousal maintenance for an abuse of discretion and will affirm if there is any reasonable evidence to support the award. *Helland v. Helland*, 236 Ariz. 197, 202, ¶ 22 (App. 2014).

### A.    Spousal Maintenance Eligibility.

**¶38**        A party is eligible for an award of spousal maintenance if she qualifies under any one of the five factors listed in A.R.S. § 25-319(A). *In re Marriage of Cotter*, 245 Ariz. 82, 86, ¶ 10 (App. 2018). The superior court found Wife eligible for spousal maintenance based on two factors: (1) the parties had a marriage of long duration and Wife is of an age that may preclude employment at a level of self-sufficiency, A.R.S. § 25-319(A)(5), and (2) Wife significantly reduced her income or career opportunities for Husband's benefit, A.R.S. § 25-319(A)(4).

**¶39**        The evidence supports the finding that Wife significantly reduced her income or career opportunities for Husband's benefit. *See* A.R.S. § 25-319(A)(4). Wife was 60 years old at trial and last worked as a massage therapist in 2009. When the parties moved to Arizona, she left the workforce to care for the family while Husband traveled extensively for work. Nothing in the record showed that Wife could obtain adequate employment given her health or the time gap since she last worked.

**¶40**        Because the record supports the finding that Wife qualified for spousal maintenance under § 25-319(A)(4), we affirm the conclusion that Wife was eligible for spousal maintenance. *Cotter*, 245 Ariz. at 86, ¶ 10 (noting a party need only qualify under one factor to be eligible for spousal maintenance).

### B.    Amount and Start Date of the Award.

**¶41**        Because we vacated the ruling that the joint trust account is community property and remanded for reconsideration of this significant asset, the superior court must reconsider the amount and duration, if any, of the spousal maintenance award. Although we express no opinion on the merits of this question, the court should reconsider the factors in § 25-319(B) on remand. Accordingly, we do not address the arguments as to those factors. We vacate the award of spousal maintenance and order the superior court to reconsider the appropriate spousal maintenance award, if any, on remand.

## VII.   Wife's Expert Witness Fees.

**¶42**        The superior court ordered Husband to pay $8,000 of Wife's business valuation expert fees because Wife prevailed on this issue.  The court also found Husband's position on the business valuation was unreasonable and not supported by an independent and certified business appraisal.  Although the court did not cite a statute, we presume it relied on A.R.S. § 25-324, which authorizes an award of "the costs and expenses of maintaining or defending" a dissolution or custody proceeding.  We review this award for an abuse of discretion.  *See Breitbart-Napp v. Napp*, 216 Ariz. 74, 83, ¶ 35 (App. 2007).

**¶43**        The fact that Wife prevailed on the business valuation does not support the award of expert witness fees.  "[Section] 25-324 does not establish a prevailing party standard for awarding fees and costs." *Id.* at 84, ¶ 39.  Because the superior court relied on an incorrect legal standard, we vacate the order.  On remand, the superior court may reinstate the fee award if it determines that Husband's position was unreasonable independent of Husband's decision not to obtain an independent and certified business appraisal.

## VIII.   Past Child Support.

**¶44**        In addition to a prospective child support order, the superior court ordered Husband to pay past child support from July 1, 2019, to April 30, 2021.  Husband argues this was an abuse of discretion because Wife used community property royalties for the child's expenses.  We review child support awards for an abuse of discretion and accept the findings of fact unless clearly erroneous.  *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009).

**¶45**        Under A.R.S. § 25-320(B), the court must order retroactive child support if it finds, as here, (1) there is no previous order for child support, and (2) a current child support order is appropriate.  *Simpson v. Simpson*, 224 Ariz. 224, 225-26, ¶¶ 7, 9 (App. 2010).  Thus, the court was required by § 25-320(B) to order past child support.

**¶46**        In determining the amount of the past child support order, the court could consider any amount Husband paid for temporary or voluntary support. A.R.S. § 25-320(B).  Husband did not pay any temporary or voluntary support directly to Wife.  Nevertheless, Husband argues that past child support is not warranted because the parties used the community royalties for their living expenses during the proceedings.  According to Husband, he effectively paid voluntary support because Wife spent more

than her half of the royalty income. Even if we make the rather tenuous assumption that this constitutes a "voluntary payment" of child support by Husband, it is not clear that Wife spent more than her share of the community funds. *See supra* ¶ 34. Given the conflicting evidence, we cannot say the court abused its discretion in finding that Husband was not entitled to credit for any "voluntary support."

**¶47** Because we are vacating and remanding for the superior court to reconsider the appropriate spousal-maintenance award, we also vacate and remand the child-support award to allow the court to recalculate child support to account for any change in spousal maintenance. *See* Guidelines § XVII(A) (2022).

### IX. Attorney Fees On Appeal.

**¶48** Both parties request attorney fees and costs on appeal under A.R.S. § 25-324. After considering the relevant factors, we decline to award attorney fees without prejudice. The superior court may consider any requests for fees on remand, including fees incurred on appeal, pending the outcome of this litigation. The award of costs on appeal under A.R.S. § 12-342 shall also be determined pending the result on remand.

### CONCLUSION

**¶49** We vacate the ruling that the joint trust account is community property and the award of Wife's expert witness fees and remand for reconsideration. We also vacate the award of spousal maintenance but affirm that Wife is eligible for support under § 25-319(A)(5). The court shall reconsider an appropriate spousal maintenance award and recalculate child support on remand. All other rulings in the decree of dissolution are affirmed.

