NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

JACQUELINE B. ADINA, *Petitioner/Appellee*,

*v.*

ANTHONY B. ALLEN, *Respondent/Appellant*.

No. 1 CA-CV 21-0058 FC
FILED 4-19-2022

Appeal from the Superior Court in Maricopa County
No. FC2011-001576
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Becker Zarling & Moye Law, Avondale
By Gina M. Becker-Zarling
*Counsel for Petitioner/Appellee*

Law Office of Jose De La Luz Martinez PLLC, Phoenix
By Jose De La Luz Martinez
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge David D. Weinzweig and Judge Paul J. McMurdie joined.

---

**S W A N N**, Judge:

¶1          This is an appeal from an order modifying legal decision-making and parenting time.  We affirm because the modifications, though drastic, were premised on findings reasonably supported by the evidence.

## FACTS AND PROCEDURAL HISTORY

¶2          In 2004, twin children ("the Children") were born to Jacqueline B. Adina ("Mother") and Anthony B. Allen ("Father").  In 2011, Mother and Father separated and agreed to legal decision-making and parenting time.  Thereafter, the parties regularly returned to court to litigate legal decision-making and parenting time via various filings, including modification petitions filed in 2013, 2015, 2017, and 2019.

¶3          This appeal concerns cross-petitions filed in 2019 which sought to modify a September 2018 order entered under ARFLP 69 that established sole legal decision-making for Father regarding education issues, sole legal decision-making for Mother regarding medical issues, and equal parenting time.  Mother, alleging "severe abuse and manipulation of the children [by Father] causing severe emotional distress" in the Children, asked for sole legal decision-making and supervised, slightly reduced parenting time for Father.  For his part, Father asked for sole legal decision-making on medical as well as education issues, and for Mother's parenting time to be reduced to every other weekend.

¶4          The evidence at trial established that the parties engaged in frequent disputes regarding their exercise of legal decision-making and parenting time under the September 2018 order, as follows.

¶5          First, when Mother sought counseling for the Children starting in late 2018, Father objected to intake appointments that would cause the Children to miss school.  He directed the Children's school that on his parenting days, the school should not permit the Children to be removed from campus or pulled from class to talk to Mother or her agents.  According to Mother, the school informed Father that it could not honor

those instructions. Father thereafter moved the Children to a different school and gave the same instructions to that school.

¶6 The Children's intake appointments ultimately were rescheduled. When they took place in April 2019, the Children were diagnosed with anxiety disorders and were recommended therapy. In June 2019, they completed new intake appointments with a different provider and were again diagnosed with anxiety disorders and recommended therapy. They attended only a few therapy sessions in 2019; Father, by his own admission, "kept canceling" their appointments. He involved the court as well, asking in July 2019 for contempt and temporary orders based partly on Mother's failure to consult with him before scheduling appointments.

¶7 Father also objected and involved the court when the Children began attending therapy sessions virtually from Mother's house in early 2020—he argued that the sessions were not private and interfered with the Children's virtual school schedule, which he contended included the non-instructional afternoon hours. The court ruled in May 2020 that neither party could make appointments during required video-conference-based school sessions; the court further noted that the case was "an unnecessarily highly contested matter in which both parents have taken actions and engaged in conduct that conflicts with the best interests of the children." Around the same time as the court's order, the Children informed their counselors that they wished to discontinue therapy. According to Mother, Father encouraged that decision. One of the Children later disclosed in an interview that she shared Father's view that counseling is akin to chemotherapy in that it is only for people who really need it.

¶8 The parties also conflicted regarding the Children's medical care. Father objected when Mother scheduled medical physicals for the Children in 2019 as required by their school. And according to Mother, when the physicals ultimately occurred, Father became upset and tried to pull the Children from the room after she consented to them receiving the second in a series of three vaccinations. Mother further reported that Father instructed the Children to resist the final vaccination in the series.

¶9 Also in 2019, Father sought contempt and temporary orders after Mother obtained prescription acne medication for the Children against Father's wishes and without proper notice. And in 2020, Father unilaterally took the Children to a pharmacy to get immunizations for which Mother had scheduled an appointment with the Children's pediatrician. Father also contested Mother's cost-based decision not to pursue immediately

what the parties agreed was necessary orthodontic treatment for the Children, despite evidence that he was financially unable to meet other obligations: he failed to comply with the court's order that he contribute to a best interests attorney's fees (which ultimately led to the court relieving the attorney), he stated that his income had declined to the point where he had no money left over each month, and the Children's school tuition was in arrears.

¶10 Parenting time was another area of dispute. When Mother proposed taking the Children on vacation during her parenting time by picking them up directly from their out-of-state school-break camp, Father objected and refused to provide the school written consent. Similarly, when Mother sought to obtain passports for the Children, Father refused to sign necessary documents until Mother obtained court orders. Finally, when Mother contracted COVID-19 in September 2020 and asked Father to keep the Children temporarily, Father failed to return the Children upon her recovery. At the time she requested to resume parenting time, Mother was still testing positive for COVID-19 but provided Father with documents from medical providers stating that she was no longer contagious, that she could return to work, and that continued testing was not required because she could continue to test positive even after her symptoms resolved. Despite that documentation, Father refused to return the Children to Mother based on her failure to provide her positive test results.

¶11 Mother stopped contacting the Children when she requested that parenting time resume in mid-October because, she explained, she anticipated that Father would fight her about their return, and she did not want them put in the middle. She did not make any efforts to communicate with the Children until November 5, the day of trial. After the trial, she tested negative for COVID-19 and provided Father with a copy of the test results. Father, however, continued to withhold the Children.

¶12 A psychologist completed a Focused Assessment of the family in March 2020. Mother admitted to the psychologist that she had secretly recorded conversations with the Children at her attorney's direction, that she had gone through the Children's cell phones, and that she had spoken negatively about Father to the Children. She stated that Father uses religion to convince the Children that she is a bad person, and "is getting them to believe it's God's will to live with him. They say that dad has God's providence . . . ." Father stated that he never says anything negative about Mother or anything about the court proceedings to the Children unless "the children are complaining about it and I have to set the record straight" and "defend[ ] my position."

4

¶13        The Children disclosed that Mother often spoke negatively about Father and that they wanted to live with Father, with whom their religious and political beliefs aligned.  One of the Children disclosed that Father wanted her to live with him and had told her that if she did so, she would no longer have to deal with being exposed to ideas and media at odds with her religious views.  The child explained that "[m]y dad doesn't see how living with my mom full time would help me grow" because "a lot of [Mother's] views . . . don't line up with the Bible," and the child stated that she "agree[d] with him on that."  That child further stated that Father spoke to her about the court case a couple of times a week, that he warned her Mother's behavior might get worse or she might start taking the Children to doctors too much, and that Mother and Father both used the same biblical story to discuss which parent the Children should live with but Father "uses it more."  The other child refused to comment on whether either of her parents invoked religion when discussing where she should live, but she opined that Father "has better spiritual advice to offer."

¶14        The psychologist reported "significant concerns about Father's ability to make decisions with Mother as he appears to create conflict by continuously disagreeing with her and involving the children in decision making," concluded that "Mother also has weaknesses in her co-parenting style," and opined that "[b]oth parents appear to lack significant insight into how they are contributing to the children's mental health."  The psychologist explained that "both parents are engaging in alienating behaviors, although Father's behaviors are actively turning the children against Mother."  The psychologist emphasized, however, that "[a]side from the fact that Mother speaks negatively about Father, the children had no viable concerns about Mother or her home environment that suggest she should have limited contact with the children," but, "[n]otably, Father engages in similar behavior against Mother, but is actively persuading the children to report that they prefer to have increased parenting time with him."  The psychologist explained that "parental alienation is a form of emotional abuse onto a child," and recommended that the court appoint a therapeutic interventionist or consider supervising Father's parenting time "given that it is believed that the children['s] statements are solely based on Father's comments to the children."

¶15        After making extensive findings, the superior court concluded that it was in the Children's best interests for Mother to have sole legal decision-making and for Father to have limited supervised parenting time.  The court ordered that Father would have no contact with the Children until mid-February and thereafter would have up to three hours of supervised parenting time every other week, with the possibility of

enlarged parenting time after six months. The court further ordered Father to participate in a psychological evaluation, individual counseling, and family counseling.

¶16          Father appeals.

## DISCUSSION

¶17          Father challenges the supervision requirement and the removal of his legal decision-making regarding education.[1] We review orders concerning legal decision-making and parenting time for an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013). The superior court abuses its discretion if no evidence supports its decision, *Pridgeon v. Superior Court (LaMarca)*, 134 Ariz. 177, 179 (1982), or if it commits an error of law in exercising its discretion, *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455–56 (1982). We do not reweigh conflicting evidence, and we defer to the superior court's credibility determinations. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

I.          THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY AWARDING MOTHER SOLE LEGAL DECISION-MAKING.

¶18          The court must determine legal decision-making, either initially or on a petition to modify, in accordance with the child's best interests after considering and making specific findings regarding all relevant factors, including statutorily enumerated ones, and why the decision is in the child's best interests. A.R.S. §§ 25-403, -403.01(B).

¶19          Here, the court made specific and detailed findings about all relevant factors and the reasons why sole legal decision-making for Mother was in the Children's best interests. The court acknowledged that the parties had a long history of conflict and an inability to agree, and that Mother had engaged in problematic conduct, including talking negatively about Father to the Children, secretly recording the Children, and cutting

---

[1]          Father contends in his reply brief that Mother appears to agree with his appeal because a passage in her answering brief states that the superior court abused its discretion. Father's contention is abjectly unreasonable. Viewed in the context of Mother's brief as a whole—in which she repeatedly and clearly argues that the superior court acted within its discretion and should be affirmed—the cited passage is obviously nothing more than the product of an editing error by Mother's counsel. We also decline Father's invitation to strike Mother's brief for noncompliance with ARCAP 13.

off her communication with the Children shortly before the trial. The court emphasized, however, that Father had engaged in a pattern of conduct designed to interfere with Mother's ability to make decisions, exercise parenting time, and maintain a relationship with the Children. Notably, the court found that Father was motivated by a desire to keep the Children from Mother, that he "was abhorrent in his active prevention of Mother exercising her ability to participate in decision-making concerning the children," that he "disagreed with the majority of [Mother's] medical decisions with no apparent good reason," that he interfered with Mother's ability to obtain counseling that the Children were "in dire need of," that he had a "calculated plan to alienate the Children from Mother," and that he "use[d] religion as a weapon against Mother [to t]each[ ] the children to dislike Mother" and convince them that "living with Mother is contrary to G-d's will." The court further found that Father was "unnervingly obstructive during his cross-examination at trial," and his conduct and demeanor suggested "an undiagnosed mental health concern."

¶20 The evidence reasonably supported the court's findings, and we defer to its credibility determinations. Father points out that Mother made poor parenting decisions. But the court expressly considered those decisions, and we do not reweigh the evidence. The court did not abuse its discretion by concluding that sole legal decision-making for Mother served the Children's best interests.

## II. THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY RESTRICTING FATHER'S PARENTING TIME.

¶21 "A parent who is not granted sole or joint legal decision-making is entitled to reasonable parenting time to ensure that the minor child has substantial, frequent, meaningful and continuing contact with the parent unless the court finds, after a hearing, that parenting time would endanger the child's physical, mental, moral or emotional health." A.R.S. § 25-403.01(D). "The court may modify an order granting . . . parenting time rights whenever modification would serve the best interest of the child, but the court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger seriously the child's physical, mental, moral or emotional health." A.R.S. § 25-411(J). The court shall order supervised parenting time "if the court finds that in the absence of the order the child's physical health would be endangered or the child's emotional development would be significantly impaired, and if the court finds that the best interests of the child would be served." A.R.S. § 25-410(B).

7

¶22　　　　Here, the court found that Father's time "must be supervised to protect the children's physical, mental, or emotional health," explaining that "Father has engaged in significant acts of parental alienation" because "he has incessantly pressured the children to live with him full-time and even told them that it was G-d's will that they live with him." The court further found that allowing Father to have unsupervised parenting time "would or could endanger seriously the children's physical, mental, or moral health or would significantly impair the children's emotional development." The court emphasized the psychologist's statement that "parental alienation is a form of emotional abuse," found that "[t]his alienation and emotional abuse has created depression, anxiety, and self-esteem issues with the children," and concluded that absent significant intervention, "the children will be at risk for suicidal ideation and depression that they will carry with them into adulthood."

¶23　　　　The evidence reasonably supported the court's findings. Father emphasizes that the parenting-time restrictions imposed by the court were more draconian than what Mother requested. The court, however, was not constrained by Mother's position—the court has an independent duty to consider whether parenting-time restrictions are necessary to protect children from harm. *See Hart v. Hart*, 220 Ariz. 183, 187, ¶ 16 (App. 2009) (holding that court may order supervised parenting time sua sponte). We also reject Father's contention that his behavior was insufficient to create serious endangerment. In view of the evidence that Father had alienated the Children from Mother and had obstructed their ability to receive counseling for diagnosed disorders, the superior court reasonably concluded that unsupervised parenting time for Father would seriously endanger the Children's mental or emotional health.

¶24　　　　We recognize that the modification order drastically altered the status quo, which had been equal parenting time since the case's inception. On this record, however, we cannot say that the court abused its discretion by reducing Father's parenting time to three hours of supervised time every other week.

**CONCLUSION**

¶25          We affirm for the reasons set forth above.   We deny the parties' competing requests for attorney's fees.  Mother is entitled to recover her costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA