NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LEIGH NYVEEN BILTIS, *Petitioner*,

*v.*

JACK CHARLES BILTIS, *Respondent*.

No. 1 CA-SA 25-0210

FILED 01-30-2026

Petition for Special Action from the Superior Court in Maricopa County
No. FC2022-051165
The Honorable Julie Ann Mata, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART**

COUNSEL

The Cavanagh Law Firm, PA, Phoenix
By Christina S. Hamilton
*Counsel for Petitioner*

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin, Elizabeth Nañez
*Counsel for Respondent*

---

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the court, in which Judge Michael J. Brown and Judge Andrew J. Becke joined.

---

**G A S S**, Judge:

¶1        Wife Leigh Nyveen Biltis seeks special action review of the superior court's order setting a supersedeas bond for husband Jack Charles Biltis. The court accepts special action jurisdiction and grants relief by vacating that portion of the order requiring wife to post with the superior court $667,650 in proceeds from the sale of the Scottsdale residence. The court denies any further relief.

## FACTUAL AND PROCEDURAL HISTORY

**I.      In the dissolution decree and later orders, the superior court awarded wife $5,250,900.23 plus an undetermined amount for her waste claim related to the Paradise Valley Residence.**

¶2        The superior court entered a dissolution decree after a contested hearing. This special action and the pending appeal involve matters related to the superior court's division of property orders.

¶3        In the property division, the superior court entered a judgment for wife against husband. The superior court set $5,094,000 as the total fixed award in wife's favor on the property division. That amount included $3 million for wife's equity in a wholly owned community business and $2,094,000 for wife's equity in a minority owned business under *Schickner v. Schickner*, 237 Ariz. 194, 198 ¶ 17 (App. 2015). That judgment did not include 2 items. First, the superior court awarded wife $156,900.23 for her attorney fees and costs. Second, the fixed amount did not include the final value of wife's waste claim against husband.

¶4        In the decree, the superior court left the waste claim's value as a variable based on a formula the superior court devised. The value of wife's waste claim arises because the parties over-financed the construction of their Paradise Valley residence. Husband argued the Paradise Valley house had a value of $44 million. Other evidence, including 2 appraisals, placed the value at about $25 million. The amount the parties owe on the Paradise Valley house remains an open question because it depends on the

2

amount of builder's construction lien and the final sale price. Based on the above, the superior court determined a formula for calculating that waste claim: 50% of the amount owed to the builder when the Paradise Valley residence sells.

¶5         The decree required husband to make monthly payments of $10,000 on his property obligations under the decree. The first $5,000 monthly amount was for husband's *Schickner* $2,094,000 obligation to wife until he fully paid the balance. The second $5,000 monthly amount was for husband's obligation for wife's waste claim, the final amount of which had not been determined. On top of the monthly payments, the superior court ordered husband to pay one-half of both balances in 2 years and the remaining balances with a balloon payment at 8 years.

¶6         With the above, the total award in wife's favor was $5,250,900.23, which includes $156,900.23 in attorney fees and costs, with the total value of the waste claim yet to be determined.

**II.     The superior court also awarded wife husband's one-half interest in the Scottsdale residence, which the superior court valued at $667,650.**

¶7         The decree awarded wife the Scottsdale residence. If wife could not timely refinance the Scottsdale residence to remove husband from the mortgage, then wife had to sell it. Husband was to receive credit against his $5,250,900.23 obligation to wife for his 50% interest in the net proceeds.

¶8         Before wife sold the Scottsdale residence, the superior court valued husband's 50% credit at $667,650. The superior court set that value based on its earlier order finding the net proceeds would be $1,335,300. The superior court made that earlier finding because both husband and wife asked it to do so even though the Scottsdale residence had not sold. And for a time, no one objected to that amount.

¶9         Wife now argues that amount is too high based on the actual sale. Wife alleges the total net proceeds ended up being $851,684.09, making husband's share just $425,842.04. The difference is $241,807.96.

¶10         Nothing in the record shows wife asked the superior court to address this issue before raising it in this special action. Instead, an appendix to wife's special action petition is a document from Chicago Title Agency Inc. dated June 5, 2025, purporting to be a final master statement for the sale of the Scottsdale residence. The date on that statement is long

after the superior court set the $667,650 amount and several weeks after the superior court set the supersedeas bond. The parties provided the record, and nothing in that record discusses that statement or the actual sale amount. And nothing in the record suggests wife asked the superior court to reduce the $667,650 based on the actual sale amount.

### III. The mathematics of the amended supersedeas bond, which is the subject of this special action, generally are not in dispute.

¶11 The parties actively litigated the supersedeas bond before the superior court, resulting in several changes before wife brought it to the court as a special action. Ultimately, the superior court required husband to post a $4,583,250.23 bond. The amount was based on how much husband owed wife under the decree exclusive of the undetermined waste judgment ($5,250,900.23) less a credit for husband's one-half share of the Scottsdale residence net sale proceeds ($667,650).

¶12 Wife says husband did not ask the superior court to order wife to deposit $667,650 of the sale proceeds into a restricted account. But he did. In Husband's Position Statement for Oral Argument on Supersedeas Bond and Stay, he wrote:

> Husband requests that each of these orders be stayed until an appeal can be resolved, and that Husband's 50% of the sale proceeds from the Scottsdale house ($667,650 based on the $1,335,300 value per the court's January 8, 2025 ruling), be held in a restricted account as collateral for the bond. This total collateral and offset of $83[1],998.50 ($667,650 + $164,348.50) should be more than sufficient as a bond pending appeal.

Using that formula, the superior court ordered husband to post $164,348.50 (or less than 20%) of his proposed supersedeas bond and then ordered wife to post $667,650 (or more than 80%) of the proposed supersedeas bond.

¶13 But the superior court then went a step further. The superior court also credited husband with the $667,650 by reducing the supersedeas bond by that amount in addition to ordering wife to post the $667,650 as part of husband's supersedeas bond, saying:

> Regarding Respondent's equity in the Scottsdale Home of $667,650, the Court concludes it should have considered this in the bond determination, as the Decree factored this equity into the *Sch[i]ckner* Judgment. It is the Court's understanding

that attempts are currently being made to sell the Scottsdale Home. The Court agrees with Respondent that permitting Petitioner to obtain all the proceeds of the Scottsdale Home would be, in effect, collecting on the *Sch[i]ckner* Judgment.

Therefore, in order to allow the home to be sold while still preserving the status quo pending appeal, the Court concludes that depositing [husband's] share of the equity in the Scottsdale Home with the Clerk of the Court after sale of the home and pending the appeal is appropriate.

The superior court summed up its reasoning as follows:

The Court therefore concludes that an appropriate bond amount would constitute the total, quantifiable amount of the judgments in the Decree, plus the Fees and Costs Judgment, minus Respondent's equity in the Scottsdale Home, which, as set forth above, will be deposited with the Clerk of the Court pending Respondent's appeal. The total, quantifiable amount of the judgments against Respondent is $5,250,900.23, comprised of the TAG CB Judgment ($3,000,000), the *Schickner* Judgment ($2,094,000) and Fees and Costs Judgment ($156,900.23). Subtracting Respondent's 50% equity in the Scottsdale Home of $667,650 from the *Schickner* Judgment leaves the total quantifiable amount of $4,583,250.23.

¶14        In setting the supersedeas bond, the superior court declined to include any amount for husband's monthly $5,000 obligation based on waste. The superior court explained:

Regarding the Waste Judgment, the Decree provided that it be paid at the rate of $5,000 per month with a balloon payment for half in 2 years and the balance due in a balloon payment in eight years. But again, the problem with security for such a judgment is that the amount has yet to be ascertained. Accordingly, any attempt to order a bond amount may result in, on the one hand, inadequate security, and on the other excessive security, and in neither of those situations is the status quo maintained. The Court accordingly declines to alter its March 3, 2025 ruling regarding the Waste Judgment. The Court reiterates that once the Waste Judgment becomes quantifiably ascertainable, it will reconsider this issue.

5

**SPECIAL ACTION JURISDICTION**

**¶15** Because this matter involves a challenge to a supersedeas bond, the court accepts special action jurisdiction. Supersedeas bond issues tend "to evade review" on appeal because the issues "become moot before an appeal." Ariz. R. P. Spec. Act. 12(b)(5). For that reason, wife has no "equally plain, speedy, and adequate remedy by appeal" in this family court matter. *Bobrow v. Herrod*, 239 Ariz. 180, 182 ¶ 6 (App. 2016) (granting special action jurisdiction when former spouse challenges a supersedeas bond). The court thus appropriately exercises special action jurisdiction here. *Id.*

**DISCUSSION**

**¶16** The court reviews the superior court's rulings on a supersedeas bond for abuse of discretion. *Kellin v. Lynch*, 247 Ariz. 393, 396–97 ¶ 13 (App. 2019). "Absent statutes or rules to the contrary, a court has the inherent discretion and power to allow for flexibility in the determination of the nature and extent of the security required to stay the execution of the judgment pending appeal." *Id.* (quotation omitted).

**¶17** "The [superior] court abuses its discretion when it makes an error of law in reaching a discretionary conclusion or when the record, viewed in the light most favorable to upholding the [superior] court's decision, is devoid of competent evidence to support the decision." *Michaelson v. Garr*, 234 Ariz. 542, 544 ¶ 5 (App. 2014) (quotation omitted). The court does not reweigh evidence on appeal. *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009).

**I.** **In 2019, the Arizona Supreme Court adopted Rule 7(a)(7), giving the superior court broad discretion when setting supersedeas bonds for family court judgments.**

**¶18** A supersedeas bond serves as security a party posts "to stay enforcement of or execution on a judgment while an appeal is pending." *Lynch*, 247 Ariz. at 396–97 ¶ 13. "[T]he purpose of posting a supersedeas bond is to preserve the *status quo* pending appeal." *Id.*

**¶19** Before 2019, the same rule governing supersedeas bonds for civil judgments (Rule 7(a)(4), Arizona Rules of Civil Appellate Procedure) applied to family court judgments too. *See Scott v. Bronstein*, 259 Ariz. 199, 203 ¶ 7 (App. 2025). In 2019, that changed when the Arizona Supreme Court adopted a rule just for family court judgments. Ariz. R. Civ. App. Pro. 7(a)(7). Rule 7(a)(7) says:

For that portion of any family court judgment that divides assets or orders the transfer of property or money under A.R.S. § 25-318, or that awards costs or expenses under A.R.S. § 25-324, the superior court must determine the amount of the bond, if any, that the requesting party must post, taking into account the judgment as a whole and whether requiring a bond would impose an undue hardship.

**¶20** Because of that 2019 change, Rule 7(a)(4)'s formula for civil judgments no longer applies to family court judgments. Instead, Rule 7(a)(4) says it applies "[e]xcept for family court judgments governed by Rule 7(a)(7)." *Bronstein*, 259 Ariz. at 202 ¶ 8 (ruling "the rule's text . . . explicitly reserves the 7(a)(4) formula for judgments not governed by Rule 7(a)(7)").

**¶21** Rule 7(a)(7) does not establish a formula to calculate a supersedeas bond for family court judgments. Instead, the superior court "must determine the amount of the bond . . . 'taking into account the judgment as a whole and whether requiring a bond would impose an undue hardship.'" *Id.* (interpreting Rule 7(a)(7)). In doing so, the superior court must set an appropriate bond "to preserve the status quo or the effectiveness of the judgment." *Id.* (quoting Rule 7(a)(2)).

**¶22** Summarizing those points, the superior court must consider 3 factors when setting a supersedeas bond for a family court judgment:

1. The totality of the circumstances of the family court judgment, as in take "into account the judgment as a whole,"
2. Whether imposing a supersedeas bond would impose an undue hardship on the appealing party, and
3. What is necessary to preserve the status quo.

*See id.* at ¶ 10.

**¶23** After considering those 3 factors, the superior court "can make downward deviations from a judgment's value in fixing the amount of a supersedeas bond." *Id.* at 202 ¶ 11. Indeed, the superior court may decline to "to set 'any' supersedeas bond by considering 'whether requiring a bond would impose an undue hardship.'" *Id.* (quoting Rule 7(a)(9)(B)).

**II.** **It was an abuse of discretion to require wife, the party who did not request the stay, to deposit $667,650 with the court for assets awarded to her in the decree.**

¶24        One thing did not change when the Arizona Supreme Court adopted Rule 7(a)(7) in 2019: Who must post the security for the bond. It is the party who asks to stay the judgment and no one else.

¶25        Rule 7(a)(5) says, "If the judgment includes the recovery of an interest in real or personal property, the superior court must determine the amount of the bond, if any, that the requesting party must post." Here, that person is husband, not wife. And though the superior court has broad discretion when determining the supersedeas bond amount under Rule 7(a)(7), that discretion does not extend to requiring the non-appealing party to post assets awarded to that party in the decree, whatever the reason for the award.

¶26        Husband argues the superior court was merely staying that portion of the award based on the idea allowing wife to retain it was collecting on a debt. Not so. Husband does not explain how reducing the amount of the bond by $667,650 and then requiring wife to post that amount serves as security to justify staying wife's enforcement of husband's obligations while husband's appeal is pending. *See Kellin*, 247 Ariz. at 396–97 ¶ 13.

¶27        The supersedeas bond here secures the debt husband owes wife under the decree. It protects wife's interest under the decree while preserving the status quo. Requiring wife to post one-half of the net proceeds from the sale of property awarded to her in the decree has the opposite effect. It protects husband's potential interest if he prevails on appeal and then again prevails on remand.

¶28        In short, the superior court awarded husband no interest in the Scottsdale residence. It awarded it all to wife. Husband received an offset from his other debt obligations under the decree based on what his community interest in the Scottsdale residence would have been. But under the decree, the net proceeds from the sale—all of them—belong to wife.

¶29        It thus was an abuse of discretion to adjust the bond amount by making wife post $667,650 for 2 reasons. First, there was no authority to require wife to post anything awarded to her with respect to husband's supersedeas bond. Second, even if there was authority to impose the obligation on wife, when the superior court made wife post that amount while also reducing husband's bond obligation, husband received double the adjustment. Under a totality of the circumstances, doubling the adjustment goes beyond what is necessary to preserve the status quo.

III.    **The superior court did not abuse its discretion when it decreased husband's bond obligation by $667,650 based on a credit for his debt obligation that ruled husband's supersedeas bond did not have to cover any amount for the *Schickner* award to wife but to husband**.

¶30        Before the supersedeas bond became an issue, the superior court valued husband's equity interest in the Scottsdale residence at $667,650. The superior court then used that amount when it calculated the supersedeas bond. Wife argues the superior court should have used $425,842.04—the value of husband's community interest based on the actual sale. The record does not support wife's requested relief.

¶31        First, the parties, including wife, asked the superior court to value that interest before the supersedeas bond issue arose. It did as they requested. Second, wife concedes it was appropriate to reduce the supersedeas bond by husband's community interest in the Scottsdale residence. And third, nothing in the record before the court shows wife asked the superior court to reduce the supersedeas bond based on the final sale amount.

¶32        Wife does not support her special action by citing any alleged error by the superior court. Instead, wife argues, "On special action, it is right for this Court to modify the credit Husband was to receive to the amount equal to half the net proceeds and then have Husband post additional bond to cover that reduction in the credit (i.e. another $241,808 should be posted to stay enforcement)." But the court's standard of review is whether the superior court abused its discretion.

¶33        The court cannot say the superior court erred, let alone abused its discretion, because it did not increase husband's bond based on the $241,807.96 difference what wife says is the actual sale amount and what the superior court found at wife's request before the actual sale when the court can identify no evidence wife ever asked the superior to do so.

IV.    **The superior court did not abuse its discretion when it declined to increase the supersedeas bond based on wife's waste claim but still stayed husband's $5,000 monthly payment obligation on that claim.**

¶34        The superior court explained its reason for staying the waste claim without requiring husband to post any added amount on the supersedeas bond. The superior court said, "the problem with security for such a judgment is that the amount has yet to be ascertained. Accordingly,

any attempt to order a bond amount may result in, on the one hand, inadequate security, and on the other excessive security, and in neither of those situations is the status quo maintained."

¶35        The superior court thus considered the totality of the circumstances and what was necessary to preserve the status quo. *Scott*, 259 Ariz. at 203 ¶ 9. The superior court could "make downward deviations from a judgment's value in fixing the amount of a supersedeas bond." *Id.* at ¶ 11. But wife instead essentially asks the court to reweigh the evidence on appeal, which the court will not do. *See Hurd*, 223 Ariz. at 52 ¶ 16.

¶36        The court thus cannot say the superior court committed an error of law or its reasoning was "devoid of competent evidence." *Michaelson*, 234 Ariz. at 544 ¶ 5.

## ATTORNEY FEES AND COSTS

¶37        Wife and husband both seek an award for attorney fees and cost under A.R.S. § 25-324 and Rule 17, Arizona Rules of Special Action. Because wife was only partially successful in this special action, the court exercises its discretion and declines her request. The court exercises its discretion and awards husband his reasonable attorney fees and costs upon his compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶38        The court thus accepts special action jurisdiction. The court further vacates that portion of the supersedeas bond order requiring wife to post $667,650 in proceeds from the sale of the Scottsdale residence. The court denies any further relief.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR